## John Bt. Bomier v. Thomas Caldwell.*

In a contract for the conveyance of land, the time, place and mode of payment, are not considered matters of substance, unless by the express stipulations of the parties they are declared to be so, or unless from the special nature of the case, and the necessary intention and understanding between the parties, they must be deemed material. Therefore, where on a bill for the specific performance of a parol agreement for the purchase and conveyance of lands, the contract as proved varied in these particulars from that set out in the bill, but corresponded in other respects; *Held*, that the variance was not material.

Where the parties to an agreement have not expressly stipulated that performance at a particular time shall be an essential part of the agreement, and where from the nature and circumstances of the contract, and the situation of the parties, there would be no particular hardship upon the party against whom the execution of the contract is sought to be enforced,—the conduct of the party in default not being unfair, or his claim unconscientious—a Court of Equity, so far as performance at the time is concerned, will aid the party in default, and decree a specific execution of the agreement as the only adequate measure of equitable justice between the parties.

Where under a parol contract for the purchase and conveyance of lands, the vendor had caused the land to be surveyed, and received upwards of one half of the purchase price, and put the vendee in possession, and had permitted him to retain that possession for several years in reliance upon the contract, without taking any steps to put an end to it; *Held*, that these acts of the vendor constituted such a part performance as to take the case out of the operation of the Statute of Frauds, and entitle the vendee to a specific performance of the agreement.

In a bill for the specific performance of a parol contract for the conveyance of land, the general facts relied upon, showing a part performance as a ground for taking the case out of the Statute of Frauds, and for enforcing the agreement, must be specifically set forth. And where evidence had been taken in the case showing valuable improvements made by complainant on the land in controversy, but there was no allegation in the bill with respect to such improvements; *Held*, that such evidence could not be considered in the decision of the cause.

*Decided March 6, 1841.*

Appeal from the Court of Chancery.

*F. Johnson,* for defendant and appellant.

*J. A. Van Dyke,* for complainant and respondent.

FLETCHER CH. J.:

The appeal in this case is by the defendant, from a

---

decree of the Court of Chancery, by which the appellant was directed to convey to the respondent a certain lot of land in pursuance of a parol agreement.

The counsel for the defendant object to the decree:

1. Because the contract was within the Statute of Frauds, and therefore can not be enforced.

2. That the contract admitted by the answer and supported by the evidence, is materially variant in substance from that set out in the bill.

3. That there has not been such performance of the agreement on the part of the respondent as to take the case out of the operation of the statute: Because, *First*, payment of a part only of the purchase money has been made: *Second*, time was of the essence of the contract, and the respondent had been long in default in making payment, and this lapse of time deprives him of his right to claim specific performance: *Third*, the possession taken by the respondent was not under the agreement, and possession alone is not sufficient to take the case out of the statute: *Fourth*, the evidence of improvements made by the respondent should have been suppressed, and can not be considered as giving respondent any claim to a specific execution of the agreement, because not alleged in the bill.

The first objection obviously depends upon our decision upon the third.

The respondent filed his bill in February, 1838, setting forth that, in the year 1830, he and the appellant entered into a verbal agreement, by which the appellant agreed to sell him a certain lot of land in the county of Monroe, in this state, giving a particular description of the lot, being three arpents in front on Otter Creek, and twenty-five arpents in depth, for the sum of $150, $80 of which was to be paid in cattle on the taking possession of the lot by the respondent, and the balance in three years; but in case it would not be convenient for

the respondent to pay the balance at the expiration of three years, then the appellant agreed to extend the time for such payment to four, five or six years, as might be most convenient for respondent; the balance to be paid in cattle or grain as might be most convenient for respondent, and that the appellant should execute a conveyance to respondent as soon as he obtained the legal title to said lot from Antoine Lasselle; and that the respondent assented to these terms, and agreed to make payments accordingly:

That in pursuance of such agreement the appellant caused the land to be surveyed, and put the respondent into possession, and respondent paid the eighty dollars in cattle as agreed:

That at about the time of taking possession, the appellant informed him that he had obtained the legal title to the land from Lasselle, and appointed a day on which he would make a conveyance: That he called on appellant on the day appointed, when appellant said he had forgotten the appointment: That he again called on appellant some time in the spring of 1831 for a conveyance, when appellant said he was busily engaged in settling the estate of one Lasselle, but that he would execute the same at a further day:

That from that time to the tenth of July, 1835, he frequently called on appellant for a conveyance of the land:

That on the day last mentioned he tendered to the appellant $94,50, being the balance of principal and interest due on said contract, and demanded a deed of conveyance of said land, and that the appellant refused to accept the money or make conveyance.

That from the time he was put in possession by the appellant he has remained in possession up to the time of filing his bill, and has paid all taxes and assessments on the land: And during that time he has always been

ready and willing to perform his part of the agreement.

The appellant in his answer sets up the statute in bar, and denies having made any contract respecting the land with respondent in the year 1829, but admits that he made a contract with him in 1830, respecting the lot in question, which lot he admits to be correctly described, but says by that agreement respondent was to give him either two or three dollars an acre, and he thinks it was three. He admits that eighty dollars was to be paid in cattle at the time respondent took possession of the lot, but he denies that he agreed to give respondent three years for the payment of the balance, but says that respondent, after paying the eighty dollars on taking possession, agreed to let him have a yoke of oxen the next fall, and to pay the balance that should be then due in three years: That by the agreement, respondent was also to pay the taxes for three years on two other lots of land adjoining the one in question, owned by the appellant. He denies that he agreed to give a deed of the lot until the whole consideration had been paid, or that respondent ever called on him for a deed until the tenth of July, 1835. He admits that he caused the lot to be surveyed, and put the respondent in possession, and that he had continued in possession ever since, and that he had paid the taxes on that lot. He also admits the payment of the $80 in cattle after the time he gave the respondent possession. He alleges that respondent had not delivered the yoke of oxen, or paid the taxes on the adjoining lot of land. He also alleges that, by the contract made by him with the respondent, he was to give a bond for a deed on the delivery of the yoke of oxen the next fall, and to execute a conveyance when the balance should have been paid in full. He denies that he agreed to take the balance due after the delivery of the oxen in cattle or grain, or that he agreed to give a further time than three years for the payment of the balance if the

respondent should not find it convenient to pay at that time. He admits that respondent called on him on the tenth of July, 1835, and offered to pay the balance then due, and demanded a deed for the land, and that he refused to accept the money or make the conveyance.

The objection by the appellant that the case is within the Statute of Frauds, is fatal unless there has been such part performance as will take the case out of the statute.

The next objection is, that there is a variance between the contract alleged in the bill, and the one shown in the proof.

The contract as stated in the answer varies from that stated in the bill, in these respects:

1. In the price, which the appellant in his answer states, according to his recollection, to have been $3 per acre, or $225 in all.

2. In the delivery of a yoke of oxen the next fall, as part of the balance due after paying the first eighty dollars, which the bill includes in the balance payable in three years.

3. In the time for giving the deed.

4. In the time for paying the balance, which the answer says was not extended beyond three years, the bill says four, five or six years, if not convenient for respondent to pay sooner.

5. In the payment of taxes on the two lots as stated in the answer.

6. In the payment of the balance in cattle or grain as stated in the bill and denied in the answer.

As to the variance respecting the price of the land, the extension of the time for paying the balance beyond three years, and the payment of the balance in cattle or grain, the testimony clearly supports the bill.

In respect to the other matters of variance, the delivery of the yoke of oxen the next fall, the time for giving the deed, and the payment of the taxes on the two lots of

land belonging to the appellant, in which the bill is not supported by the testimony, I think they can not be regarded as substantial parts of the contract.

The testimony shows that respondent was to deliver the yoke of oxen the next fall or pay fifty dollars in lieu of them. So that it was at the option of the respondent to deliver the oxen or pay the money, and the appellant can therefore be made good by compensation. And the time for the payment of the $50, I do not consider a substantial part of the contract.

If the contract proved correspond with that described in the bill, it will be established and enforced, even if there be some variance between the *terms* described and those proved, unless the variance relate to matters of substance. In the case of *Harris v. Knickerbacker*, 5 *Wend.* 638, where the answer denied the specific contract stated in the bill, but admitted one somewhat different in *terms*, varying from the contract stated in the bill as to the time of payment of a part of the purchase money, and as to payment of interest on certain payments, it was held to be no substantial variance. A correspondence as to price, and the description of the property, are matters of substance; but the time, place and mode of payment, are not considered matters of substance, unless by the express stipulations of the parties they are declared to be so; or unless from the special nature of the case, and the necessary intention and understanding of the parties, they must be deemed material. The objection, therefore, on the ground of variance, is not sustained.

But the next and most material point made in this case, is whether there has been such a part performance of the contract on the part of the respondent as will take the case out of the statute, and entitle him to a specific performance of the agreement.

1. It is objected first, that a payment of a part of the purchase money does not take the case out of the statute.

If this were the only act of part performance, it would be necessary to review the authorities, and establish a rule upon this point; but with the views I have taken of other points in this case, it is not necessary now to examine the question.

2. A second objection is that the time for payment of the balance of the consideration of the purchase, was of the essence of the contract, and that the respondent having been long in default in this respect, is not entitled to claim the extraordinary interposition of a court of equity to enforce the agreement.

Time may be made an essential condition of a contract in some cases, by the express stipulation of the parties; although Lord Thurlow is said to have intimated in *Gregson v. Riddle*, cited in 7 *Ves.* 268, that time could not be made of the essence of the contract, even by the positive stipulation of the parties. It has, however been well settled that, in some cases, the stipulation of the parties as to time may have such effect that a court of equity will not assist the party in default: — *Lloyd v. Collett*, 4 *Brown's R.* 469; 4 *Ves.* 587, *note*; 7 *Ves.* 265; 1 *Johns. Ch.* 371.

But where the parties do not particularly stipulate as to the effect which a default in the payment of the money at the time shall have upon the contract, the time is not considered an essential part of, or rather a condition of the contract, unless under peculiar circumstances, where from the nature of the transaction and the condition of the parties a just and full *compensation* could not be awarded.

Nor is the party in default in such cases ordinarily obliged to show, by way of excuse, a good cause for his default before he is entitled to a specific execution of the agreement. It is true Chancellor Kent seems to lay down a different rule in the case of *Benedict v. Lynch*, 1 *Johns Ch.* 370; where he says: " From the review I have taken of the cases, the general principle appears to be perfectly establish-

ed, that time is a circumstance of decisive importance in these contracts; but it may be waived by the conduct of the parties; that it is incumbent on the plaintiff, calling for a specific performance, to show that he has used due dilligence; or, if not, that his negligence arose from some just cause, or has been acquiesced in." The rule laid down by the learned Chancellor would appear to cast the *onus probandi* upon the party seeking a specific performance, to show affirmatively that he had used due dilligence, or that he had a just cause for excuse, or that the other party had waived or acquiesced in the default.

It will be readily seen on a review of the cases in which the question has been raised, under what circumstances a party in default shall be entitled to the aid of a court of equity to compel the execution of a contract, that eminent men have taken different views as to the rules best adapted to secure the equitable rights of the parties before them, and to secure, prospectively, a fair, prompt and steady compliance with private contracts.

While some have been disposed to require in a court of equity the same strict compliance with such contracts as is required by the rules of the common law, and to mitigate the rigor of those rules in extreme cases only, others, considering how easily courts of equity can adapt their rules to the equitable circumstances of each class of cases, and almost every individual case, and while relieving against forfeiture or hardness arising from the inattention and neglect of a party in the performance of his engagements, can at the same time protect the other party by a reasonable and fair compensation, have been disposed to adopt more liberal rules, as equally protecting the equitable rights of litigant parties, and contributing to secure the permanent establishment of a more safe and just system of fairness and honesty.

It appears to me, however, that the rule upon this subject has been settled upon reasonable and just grounds, and entirely in accordance with the principles of equity. In

*Waters v. Travis,* 9 *Johns.* 450, on appeal in the Court of Errors, Spencer J. says that "place and time are circumstances affecting only the performance of the engagement, and do not import, in a court of equity, conditions by which the parties are to be considered as contracting on the ground of a strict compliance, but are merely circumstances admitting of compensation," — citing *Powell on Cont.* 268.

The same general principle was recognized in 1 *Dessau. R.* 398, and by the Supreme Court of the United States in 6 *Wheaton* 528.

Sugden (*L. of Vend. and Pur.* 205) lays down this general proposition, applicable in equity as well as at law, that "where one party fails in performing the contract, the other, if he means to rescind it, should give a clear notice of his intention"—and refers to 6 *Madd.* 18.

In the case of *Reynolds v. Nelson,* cited by Sugden, where the purchaser deposited £25 with the vendor, and being in default on the payments, the vendor gave notice that if the purchaser did not perform on such a day, he should consider that the purchaser had abandoned the contract, and act accordingly. In a bill filed by the purchaser for the specific execution of the agreement, it was held by the vice Chancellor that as the vendor had not given notice that he intended to rescind the contract on his part, and had not returned the deposit, the complainant was entitled to have the agreement executed.

Lord Redesdale in *Davis v. Hone,* 2 *Sch. & Lef.* 347, considering the views and proceedings of courts of equity in respect to the rights of parties, where there has not been a strict compliance with the terms of contracts, remarks: "A court of equity frequently decrees specific performance where the action at law has been lost by the default of the very party seeking the specific performance, if it be, notwithstanding, conscientious that the agreement should be performed; as in cases where the terms of the agreement have not been strictly performed on the part

of the person seeking specific performance, and to sustain an action at law performance must be averred according to the very terms of the contract. Nothing but specific execution of the contract, so far as it can be executed, will do justice in such a case." And again in *Lennon v. Napper*, 2 *Sch. & Lef.* 684, his Lordship said: "The courts in all cases of contracts for estates in land, have been in the habit of relieving where the party, from his own neglect, had suffered a lapse of time, and from that or other circumstances, could not maintain an action to recover damages at law. And even when nothing exists to prevent his suing at law, so many things are necessary to enable him to recover at law, that the formalities alone render it very inconvenient and hazardous so to proceed- nor could, in many cases, the legal remedy be adequate to the demands of justice. Courts of equity have therefore enforced contracts specifically where no action for damages could be maintained; for at law the party plaintiff must have strictly performed his part, and the inconvenience of insisting upon that in all cases, was sufficient to require the interference of courts of equity. They dispense with that which would make compliance with what the law requires oppressive; and in various cases of such contracts they are in the constant habit of relieving the man who has acted fairly, though negligently. Thus, in the case of an estate sold by auction, where there is a condition to forfeit the deposit if the purchase be not completed within a certain time, yet the court is in the constant habit of relieving against the lapse of time. And so in the case of mortgages, and in many instances, relief is given against mere lapse of time where time is not essential to the substance of the contract."

Mr. Justice Story (2 *Eq. Juris. p.* 83) says: "Where the terms of an agreement have not been strictly complied with, or are incapable of being strictly complied with, still, if there has not been gross negligence in the party, and it

is conscientious that the agreement should be performed; and if compensation may be made for any injury occasioned by the non-compliance with the strict terms; in all such cases courts of equity will interfere, and decree a specific performance. For the doctrine of courts of equity is not forfeiture, but compensation; and nothing but such a decree will, in such cases, do entire justice between the parties." And again, p. 85, he adds: "One of the most frequent occasions on which courts of equity are asked to decree specific performance of contracts, is where the terms of the contract have not, in point of time, been strictly complied with. Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract."

So in the late case of *Hipwell v. Knight*, 1 *Y. & Coll.* 401, Mr. Baron Alderson, says: "In the case of a mortgage, the court, looking at the real contract, which is a pledge of the estate for a debt, treats the *time*, mentioned in the mortgage deed, as only a formal part of it, and decrees accordingly; taking it to be clear that the general intention should override the words of the particular stipulation. So in the ordinary case of the purchase of an estate, and the fixing a day for the completion of a title, the court seems to have considered that, the general object being only the sale of the estate for a given sum, the particular day named is merely formal, and the stipulation means, in truth, that the purchase shall be completed within a reasonable time, regard being had to all the circumstances of the case, and the nature of the title to be made."

From an examination of these and many other authorities which might be cited upon the point, the general principle seems to be well established, that where the parties to the agreement have not expressly stipulated that performance at a particular time shall be an essential part of the agreement, and where, from the nature and circumstances of the con-

tract, and situation of the parties, there would be no par-
ticular hardship upon the party against whom the execution
of the contract is sought to be enforced, and the conduct of
the party in default not being unfair, or his claim uncon-
scientious, a court of equity, so far as non-performance at the
time is concerned, will aid the party in default, and decree
a specific execution of the agreement as the only adequate
measure of equitable justice between the parties.

It is true, this rule requires of a court of equity the ex-
ercise of extensive and liberal discretionary powers, in order
to determine the facts and circumstances in each case, upon
which must necessarily depend the application or rejection
of the rule; but the exercise of such powers by a court of
equity is so far from being an objection, that it lays at the
very foundation of all equity, and forms its most peculiar
and excellent characteristic, as contradistinguished from the
strict, precise and unyielding principles which govern in the
courts of common law.

In the case before us the parties have not, by any stipu-
lation, made the time of payment of the essence of the con-
tract. Nor is there anything in the nature of the contract,
or the general object of the parties in making it, nor any
particular hardship on the part of the appellant showing
that a just compensation can not be made, or any unfair-
ness on the part of the respondent, which ought to deprive
the latter of his right to a specific execution of the agree-
ment, if by his acts of part performance the case be not
within the operation of the statute.

As to the acts of part performance, the appellant in his
answer admits, as stated in respondent's bill, that in pursu-
ance of the agreement he surveyed the land and put the
respondent in possession, shortly after the agreement was
made, in 1829 or 1830, when he received the $80; that the
respondent has been in possession ever since, and has paid
the taxes; that in July, 1835, the respondent offered to pay
him the balance of the purchase money then due, and de-
manded a conveyance.

It does not appear that the appellant ever made any demand of payment, or that the possession of the land be given up, or that he ever gave any notice to the respondent of his intention to put an end to the contract, or that he ever expressed any dissatisfaction as to the non-payment, until a very short time before the respondent tendered the balance due, in July, 1835.

From all that appears in the case, the respondent, under the first payment of $80, took and retained the possession, upon the fullest confidence that the agreement would be executed by the appellant; and his conduct has been fair throughout.

The possession so given to and held by the respondent, in full reliance upon the agreement, and in the absence of anything tending to show that the appellant had ever taken any steps to put an end to such contract, or even expressed any dissatisfaction at the default of the respondent with respect to the payments, and especially when the evidence shows that the appellant agreed to give a further time for the payment of the balance if the convenience of the respondent should require it, constitutes such a part performance of the agreement on the part of the respondent, under the most rigid rule ever applied by a court of equity, as must be sufficient to take the case out of the operation of the statute, and entitle respondent to a specific execution of the agreement.

There is evidence in the case showing that the respondent, during the time he has been in possession of the land, has made permanent and valuable improvements, building, and clearing twenty or thirty acres, and setting out fruit trees, valued at $200 to $500. It is objected, however, that this ought not to be considered, inasmuch as it is not alleged in the bill. The general facts relied upon, showing a part performance as a ground for taking the case out of the statute, and for enforcing the execution of the agreement, are required to be alleged in complainants bill; and

therefore in this case, the fact of the improvements by the respondent is not taken into account in the decision of the case.

An objection was made by counsel for the appellant that the possession of the land was not taken by the respondent under and by virtue of the agreement set forth in his bill. But this objection must have been founded upon the alleged variance between the contract stated in the bill, and that admitted by the answer and proved by the testimony. The view I have taken of the objection as to variance, is an answer to this objection.

I am therefore of the opinion that the decree of the Court of Chancery in this case must be affirmed. That it be so modified that the respondent shall pay or tender the balance due to the appellant on or before the fifteenth day of July next, if he shall elect so to do, and that the appellant make conveyance within one calendar month from the time the said balance shall be paid or tendered to him; and that the respondent recover his costs of this court, to be taxed in the Court of Chancery; and that if the respondent shall not so elect to pay or tender the balance by the time so fixed, that then his bill be dismissed with costs; and that the record be remitted to the Court of Chancery with directions accordingly.

*Decree accordingly.*