WILLIAM F. DICKINSON AND CHASE H. DICKINSON v. JOHN A. WRIGHT.

*Land-contract—Execution—Part performance—Ratification—Recoupment.*

1. A contract for the purchase of land signed by a son in his father's name without written authority from the father, is inoperative and void. How. Stat. § 6181.

2. The effect of part performance on a void contract is not to make it enforcible at law, but to raise such equities against whichever party permits the other to rely on it as may justify a court of equity in enforcing it specifically against him.

  Such might be the case where a contract purchaser of land had stripped it of timber so that the vendor could not be placed in statu quo ante.

3. Part performance by a vendee cannot make a contract valid against any vendor as to whom it was executed without his authority, unless there is some distinct act of ratification on his part that would establish a mutuality of obligation between himself and the vendee.

4. The ratification of a contract by an indorsement of approval upon it, does not bind the party making it or give the adverse party rights so long as it is not delivered or the indorsement is not made on he latter's duplicate. And the ratification, until then, may be withdrawn, or the indorsement erased.

5. Bringing suit at law upon a contract cannot affirm it if void, for there must be a right of action to sue on.

6. In an action for an unpaid balance on a land contract it is proper to show by way of recoupment that in consequence of the institution of a suit involving the validity of plaintiff's title, payments were deferred by mutual agreement, and that meanwhile the timber on the land was so far destroyed by fire as to lessen the value of the land.

7. A contract purchaser without a deed is protected by his good faith only so far as he has made payments if meanwhile he has notice of litigation involving the validity of his vendor's title.

Error to Van Buren. (Pealer, J.) Jan. 15.--Jan. 21.

ASSUMPSIT. Defendant brings error. Reversed.

*Henry F. Severens* for appellant. When the act or default of one party to a contract prevents the other from fulfilling

it, the latter is excused even though the contract is already partly performed: Chitty on Cont. (10th Am. ed.) 814; *Planche v. Colburn* 8 Bing. 14; *Reybold v. Voorhees* 30 Penn. St. 116; *Dubois v. Delaware Canal Co.* 4 Wend. 285; and though a contract is so far executed that it cannot be rescinded, the defendant in an action on it can claim compensation for plaintiff's default in reduction of damages: Chitty on Cont. 815; there is no difficulty in rescinding when by the recovery the rights of parties can be adjusted: *Peters v. Gooch* 4 Blackf. 515; *Drew v. Claggett* 39 N. H. 433; *Luey v. Bundy* 9 N. H. 303.

*Howard & Roos* for appellee.

COOLEY, C. J. The plaintiffs sue to recover the balance remaining unpaid on two land contracts purporting to be made by them as vendors to the defendant as vendee. One of the contracts bore date July 20, 1872, and was for the conveyance of certain lands in Van Buren county, Michigan, for the agreed price of twenty-five hundred dollars, payable in installments, all within a year. The other bore date May 13, 1872, and was for lands in the same county, for which five hundred dollars was to be paid, all within two years. Interest on deferred payments under both contracts was to be at the rate of ten per centum per annum. Both contracts contained a clause authorizing the vendee to enter into possession, and the name of William F. Dickinson was signed to both by Chase H. Dickinson. The declaration recites that on the back of each contract is the following indorsement: "This contract approved. WM. F. DICKINSON."

The plaintiffs aver in their declaration that after entering into the contracts they performed in all respects the covenants or conditions on their part to be performed; that they delivered to defendant possession of the lands, which he accepted; that they have always been ready and willing to receive the moneys due upon the contracts; that before the commencement of suit they offered to convey to defendant and demanded the amount due them, but defendant refused to pay and take a conveyance, and that they ever since have

been and still are ready and willing to make conveyance on receiving the sums due.

The defendant pleaded the general issue, and gave notice of defense that the plaintiffs never had title to the lands contracted, and were never able to make conveyance thereof. Also that at the dates of alleged purchase the lands were covered with valuable timber which was of great value, and defendant began to cut and remove the same with the consent and acquiescence of the plaintiffs: that about December 31, 1872, suit was commenced in the circuit court of the United States for the western district of Michigan in equity by Anson M. Stevens and others " for and on behalf of themselves and all others the creditors of Timothy Morse, late of Newbury, Vermont, deceased, who should come in and contribute to the expense of that suit, against William F. Dickinson, Chase H. Dickinson and George L. Seaver, as defendants, based upon the invalidity of the title of said plaintiffs in and to the real estate contained in said contracts, and for the purpose of determining the validity of their said title to said real estate, and based upon the invalidity of their said title, in which suit a writ of injunction was issued against the said Chase H. Dickinson, William F. Dickinson, their attorneys, agents, servants, solicitors and counselors, enjoining them and each of them, in substance, among other things, from cutting and removing any of the timber then standing and growing upon said real estate, and also restrained the said plaintiffs from making any deeds of conveyance of any of said real estate. That said writ of injunction was served on said plaintiffs and upon this defendant, and by reason of such service this defendant ceased cutting and removing said timber, and did not cut or remove any more of the same because of the service of such injunction. That said injunction remained in full force and undissolved until about the year 1877, and during its continuance, and about the year aforesaid a fire swept through and over said real estate, and consumed and destroyed all of the standing and growing timber on said real estate, and this without any default on defendant's part. That had said injunction not been issued and

served as aforesaid, defendant could and would have removed before said fire all of said timber, of the value aforesaid, and said real estate, by reason of said fire, has been depreci- ated in value a large amount, to wit, two thousand dollars, all of which defendant claims and insists in this case that he has the right to recoup and set off against any claim which said plaintiffs may have against him in this case, and claims that by reason of said facts he is not liable to said plaintiffs for anything in said contract." Also that he had refused to make payment in full because plaintiffs were unable to make title ; but that he had actually paid fifteen hundred dollars on the first mentioned contract, and five hundred dollars on the second mentioned contract, which sums were paid under a mistaken supposition that plaintiffs were the owners of the title to said real estate, and defendant " claims and insists that he has the right to recoup and set off all of said moneys so paid against any claim of said plaintiffs, and insists on a judg- ment against said plaintiffs for the full amount of the same, with interest."

On the trial the plaintiff Chase H. Dickinson took the stand as a witness for the plaintiffs, and testified that the other plaintiff was his father ; that witness entered into the two contracts with defendant and saw defendant sign the same ; that the approval on the back of the contracts was in the handwriting of William F. Dickinson ; that at the time of execution duplicates of everything except the indorsement of approval were delivered to defendant, but he did not know whether the approval was on the duplicates or not ; that the indorsement of approval was made the fall after the contracts were made ; that defendant was not pres- ent at the time, and witness did not know that any such approval was ever indorsed on the duplicates held by the defendant. Counsel for defendant thereupon objected to the contracts being received in evidence, on the ground that no authority from William F. Dickinson to execute the same, such as the statute requires, had been shown ; but the court overruled the objection.

Under the evidence the name of William F. Dickinson

must be understood to have been affixed to the two contracts by Chase H. Dickinson without authority. One provision of the Statute of Frauds is that " Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized by writing." How. Stat. § 6181; *Holland v. Hoyt* 14 Mich. 238, 243; *Colgrove v. Solomon* 34 Mich. 494. The contracts, therefore, at the time of their delivery, so far at least as they purported to charge William F. Dickinson and the defendant with mutual obligations, were wholly inoperative and void.

It is claimed, however, that the contracts were subsequently validated by acts of the parties; and this view of the case must have been taken by the circuit judge. The acts in validation by the defendant consisted in taking possession of the land, making payments, and cutting timber; the plaintiff William F. Dickinson approved the contracts in writing, and thereby, as to himself, it is said, adopted and affirmed what had been done in his name.

A void contract for the sale of lands is sometimes said to be made valid by acts in part performance : *Davis v. Strobridge* 44 Mich. 157 ; but by this is commonly only meant that one party by suffering the other to take action under and in reliance upon it as if it were valid, without notifying him of any purpose to insist upon its invalidity, thereby establishes against [himself] certain equities in respect to the contract which may be so strong in some cases as to justify a court of equity in enforcing it against him specifically, as if it were and had been from the first without defect. And this enforcement is often decreed upon the express ground that the contract has no validity at law, and consequently the party who in reliance upon it, has done acts from which the other is reaping the benefit would otherwise be without redress. And it may be that the acts of the defendant in this case, in taking possession and cutting timber under the as-

sumed authority of the invalid contracts, would in equity have been deemed sufficient part performance to justify a decree that he should pay the remainder of the purchase price; especially as by the cutting of timber he had rendered it impossible to place the vendors in respect to the land in statu quo. *Bomier v. Caldwell* 8 Mich. 463; *Cilley v. Burkholder* 41 Mich. 749; *Lamb v. Hinman* 46 Mich., 112; *Dragoo v. Dragoo* 50 Mich. 573; *Johnston v. Glancy* 4 Blackf. 94: s. c. 28 Am. Dec. 45; *Coles v. Pilkington* L. R. 19 Eq. Cas. 174.

But the contracts in this case are declared upon as contracts valid at law; and the suit must fail unless they are so. But if they were executed without authority as to one of the vendors, they are not validated by mere acts of part performance on the part of the vendee, even though they were acts of such a nature as would give a remedy in equity. They could only become the legal contracts of the vendor whose name was used without authority by some such distinct act of ratification on his part as would establish as between himself and the vendee a mutuality of obligation. *Palmer v. Williams* 24 Mich. 328.

No such ratification appears in this case. William F. Dickinson it is said indorsed his approval on the contracts within six months after they were executed; but this was only upon the duplicates which were retained by the vendors; and no paper was ever delivered to the defendant upon which at law he could hold William F. Dickinson liable upon the contracts. The so-called approval was retained by the vendors in their own hands and under their own control; and they might at any time at pleasure have erased it. A writing of that sort never delivered neither binds the one party nor gives the other rights: *Ayres v. Gallup* 44 Mich. 13: at most it only expresses a present intention to be bound, but which, until acted upon, may be withdrawn at pleasure. And in this case it was not shown that it was even brought to the notice of defendant before the suit was begun. It was therefore of no legal moment in the case,

and the plaintiffs failed to show that at the time suit was instituted, any legal contract was in existence.

If it could be held that the bringing of the suit was an affirmance of the contract, it would not meet the exigencies of this case; for the suit must fail unless there was a right of action previous to the time of instituting it. The question of equitable remedy by way of specific performance would be altogether different from that which is now before us, and we do not undertake to say what should be done if that remedy were sought.

But if the contract had been valid, the circuit judge would have been in error in ruling as he did that the facts set up in the defendant's notice of defense, and which he offered to prove, did not entitle him to recoupment. These facts were more fully presented in defendant's offer of proof than in the notice, and were in brief the following: That such title as the plaintiffs had to the lands at the time of making the contracts was obtained under a fraudulent probate sale of the lands of Timothy Morse; the plaintiff William F. Dickinson being privy to the fraud; that the creditors of Morse took proceedings in the Federal court to set aside the sale for fraud and obtained an injunction to restrain the cutting of timber on the lands and the making of conveyances; that notice of the suit and injunction was given to the defendant; that defendant had a conversation with Chase H. Dickenson in relation to the suit in which it was taken for granted that the contracts could not be performed while the suit was pending; that the suit was not determined until 1877, and in the meantime accidental fires had destroyed much of the timber upon the lands in which their value chiefly consisted, so that the defendant lost in large part the benefit expected to be derived from the contracts, and which he had a right to count upon, in consequence of the inability of the plaintiffs to perform their contract by a conveyance of the title as they had agreed. Most of these facts were actually proved, and the plaintiff Chase H. Dickinson testified to a conversation with defendant pending the suit in the Federal court, in which, as he says, it was agreed between

them that payment of the amount due on the contracts should be deferred because of that suit.

It is said on behalf of the plaintiffs that the suit in the Federal court could not have affected the defendant; he having bought the land in good faith, and not being a party to the suit. But if he had notice of the suit and of the process of injunction, as it seems that he did, his position as a bona fide purchaser could not constitute full protection. He had as yet no deed, and he had only paid the purchase price in part; and at most, therefore, he would be protected only to the extent of such payments. *Warner v. Whittaker* 6 Mich. 133 ; *Blanchard v. Tyler* 12 Mich. 339. It would, to say the least, have been an act of imprudence on the part of the defendant had he continued to cut timber on the land while the suit was pending.

The suit, as we understand it, terminated in establishing the alleged fraud, but plaintiffs were permitted to complete previous contracts, of which there were several; the money to be paid into court. But the contract with defendant was no longer the one he had entered into. A material change in the subject-matter of the contract had taken place without his fault while the plaintiffs had been incapable of performance, and there had been a large accumulation of interest which had been running at the highest rate allowed by law while defendant without his fault was precluded from making payment except at the risks of litigation between others. If the contract after the termination of the suit in the Federal court could be treated as valid by the plaintiffs and enforced by suit at law—upon which no opinion is expressed—it could only be so, subject to such equitable deduction by way of recoupment of damages suffered by the defendant, as he could show he had suffered by the inability of the plaintiffs to perform on their part in due season. The pendency of the suit was sufficient excuse for failure on his part to make tender and demand of deed.

We say nothing now as to how the case may be varied by any showing of understandings or oral agreements between the parties while the suit in the Federal court was pending.

It is claimed there were some which were important, and they will doubtless be brought out on a new trial which will now be ordered.

The other Justices concurred.