JOHN A. WRIGHT V. WILLIAM F. DICKINSON AND CHASE H. DICKINSON.

[See 56 Mich. 42 ; 67 Id. 590.]

*Pleading—Common counts—Bill of particulars—Action to recover payments made on land contract—Failure of consideration —Rescission.*

1. Under a bill of particulars limiting the plaintiff's claim to a recovery for money had and received by the defendants on land contracts without consideration, by reason of the vendors having no title to convey, the plaintiff may show that the contracts were void under the statute of frauds for want of due execution, it not being claimed that defendants were unprepared to meet such proof on the trial.

2. A bill of particulars, in practice, is considered in some respects as an amplification of the declaration, but is sufficient if it fairly apprise the opposite party of the nature of the claim made under it.[1]

3. A suit to recover money paid on *void* land contracts is not premature because the *invalidity* was adjudicated in an action *subsequently* brought to recover the balance due on said contracts.

4. Money paid as the purchase price of land can be recovered in an action for money had and received, whether the consideration fails for want of title or of a *valid* contract to convey; and in *either* case the purchaser must place the vendor *in statu quo*, as far as practicable, and the equities, so far as measurable by a pecuniary standard, can be settled and adjusted in the suit.

5. Where, without fault on the part of a vendee, property received under a contract has been so changed or lost that it cannot be restored in specie, but its value is capable of ascertainment, the vendee, if entitled so to do, may rescind the contract without placing the other party *in statu quo*, and in a suit to recover the moneys paid on the contract the rights of the parties can be fully adjusted.

Error to Allegan. (Arnold, J.) Argued November 4, 1887. Decided November 10, 1887.

[1] A bill of particulars filed under a common-count declaration is no part of the pleading, and does not come up on demurrer. *Cicotte v. County of Wayne*, 59 Mich. 510 (head-note 6).

Assumpsit to recover money paid on land contracts. Plaintiff brings error. Reversed. The facts are stated in the opinion, and in *Dickinson v. Wright*, 56 Mich. 42.

*Padgham & Padgham* (*Edward Bacon*, of counsel), for appellant.

*Howard & Roos*, for defendants.

CHAMPLIN, J. Plaintiff declared against the defendants upon the common counts in assumpsit, and filed therewith a bill of particulars as follows:

"SIRS: Please to take notice that the following is a bill of particulars of the plaintiff's demand in this cause, and for the recovery of which this action is brought, to wit:

"The plaintiff's bill of particulars is for moneys paid on a certain land contract made by Chase H. Dickinson and William F. Dickinson and the plaintiff above named, of which Exhibit 'B' hereto annexed is a true copy; and plaintiff's claim is that the land described in said contract was not, at the date of said contract, owned by said William F. Dickinson and Chase H. Dickinson, defendants above named, nor have they since owned said real estate in fee, and have never been the owners of said real estate, so that they could convey to said plaintiff a good and unincumbered title in fee simple; and said plaintiff claims that the moneys were so paid by him on such land contract without any consideration.

"The amounts and dates of such payments are as follows:

1872.

| | | |
|---|---|---|
| July 20. | To cash paid by plaintiff to defendants, | $100 |
| Sept. 20. | To cash paid by plaintiff to defendants, | 400 |
| | | $500 |

"The plaintiff's bill of particulars is further for moneys paid on a certain other land contract made by said Chase H. Dickinson and William F. Dickinson and the said John A. Wright, of which Exhibit 'A' hereto annexed is a true copy.

"And plaintiff claims that the said William F. Dickinson and Chase H. Dickinson never were the owners of the land described in this contract, so that they could give to the said plaintiff a title in fee simple.

"The amounts and dates of such payments are as follows:

1872.

| | | |
|---|---|---|
| July 20. | To cash paid said defendants, _____ | $100 |
| Sept. 18. | To cash paid said defendants, _____ | 1,400 |
| Nov. 8. | To cash paid said defendants, _____ | 100 |

$1,600

*"Dated December 18, 1880* "

Exhibits A and B referred to in the bill of particulars are two land contracts, being the same contracts passed upon by this Court in the case of *Dickinson v. Wright*, 56 Mich. 42.

The defendants pleaded the general issue.

On the trial of the cause before a jury the land contract Exhibit A was introduced in evidence. It was signed by Chase H. Dickinson, and said Chase H. Dickinson signed the name of William F. Dickinson. Attention of plaintiff, who was a witness in his own behalf, was called to the words: " This contract approved. William F. Dickinson,"— indorsed on the contract, and he stated that he did not know anything about the indorsement; that it was not there when it was made. The witness' attention was called to a like indorsement on Exhibit B, and he was asked:

" Do you know at any time of any indorsement of the words, ' Contract approved,' and signed ' William F. Dickinson,' on the back thereof?"

To which he answered:

" No, sir."

The question was then again repeated as to the indorsement upon Exhibit A, to which the defendants objected, on the ground that it was irrelevant and immaterial under the issue in this case, and under the bill of particulars as furnished in this case; that the plaintiff had declared and furnished a bill of particulars, declaring upon the contract as a valid one, and he was bound by his bill of particulars.

Counsel for plaintiff disclaimed having declared upon the contract, or seeking to recover for a breach of it. He stated

that he sought to recover back money paid to defendants under the count for money had and received, because the contract was void under the statute of frauds, and because there was no consideration, as the defendants had no title which they could convey. But the court held that the plaintiff was confined to the declaration as he had made it, and that there was no notice given that plaintiff sought to recover because this contract was not a binding contract; but, on the contrary, the only inference from the bill of particulars was that it was a valid contract, and that the trouble was that they had no title to convey; that under the declaration and bill of particulars he did not think it was competent to show that this contract was void for want of due execution, and sustained the objection.

We think the court erred. The declaration was for money had and received. The bill of particulars pointed out that the plaintiff sought to recover back money paid without consideration. Whether the want of consideration arose from the fact that the defendants had no title to convey, or whether the contract was void for want of due execution, was not material to be stated, only so far as such statement was proper to apprise the defendants of the claim of plaintiff, and afford them an opportunity to be prepared to try the case upon the merits. Defendants did not claim that this evidence would be a surprise to them, or that they were not prepared to meet such evidence upon the trial.

A bill of particulars, in practice, is considered in some respects as an amplification of the declaration, but it is considered sufficient if it fairly apprise the opposite party of the nature of the claim, so that there can be no surprise. *Brown v. Williams,* 4 Wend. 360.

In *Davies v. Edwards,* 3 Maule & S. 380, the action was for debt upon a demise of land, and the plaintiff furnished a bill of particulars describing the premises as being in a certain parish, and on the trial introduced an indenture of

demise between the parties of lands in another parish. It was insisted that by reason of this misdescription in the bill of particulars the plaintiff could not recover. The trial judge overruled the objection, being of opinion that the bill of particulars disclosed substantially the subject-matter of the action, which was rent; and, it not appearing that the defendant was misled by it, a verdict was entered for the plaintiff. On a rule *nisi* obtained, Lord Ellenborough, C. J., said:

" If the defendant could have shown, not only that he might have been, but that he was, actually surprised, there would have been some foundation for the argument ;"—

And he discharged the rule.

So, in this case, the subject-matter is the money which the defendants have had of the plaintiff, the consideration for which has failed. Here it seems to me that the plaintiff has been shut out by a strict construction, and concluded by a particular, fairly meant, against the justice of his case. See, also, *Duncan v. Hill*, 2 Brod. & B. 682; *McNair v. Gilbert*, 3 Wend. 344.

In *Davis v. Freeman*, 10 Mich. 188, this Court said:

" The office of a bill of particulars is to inform the opposite party of the cause or causes of action the party giving it intends to rely on at the trial, not specifically set out in the declaration, or notice accompanying the general issue."

And in *Freehling v. Ketchum*, 39 Mich. 299, it was said:

" The purpose of the rules in allowing bills of particulars to be demanded is to enable defendants to avoid surprise, and not to enable them to make vexatious requirements."

In *Cicotte v. Wayne Co.*, 44 Mich. 173, Mr. Justice GRAVES said:

" The object of the practice for the production of bills of particulars is to obviate the uncertainty of general pleading. The intent is to secure such information as will enable the parties to make an intelligent preparation for trial, and to

enter upon the investigation before the court or jury with an understanding as to what is really in controversy. The bill is often mentioned as being an amplification of the declaration, or as entitled to be considered as a part of the pleading. But such expressions are metaphorical. The bill is never in strictness a component of the pleading. It may have the effect of a pleading in so far as it restricts the proofs to what it contains."

This case is cited by defendants' counsel to support the ruling of the court below. The statement of the learned judge is accura'e, but the question to be determined is, what proofs are admissible under the contents of the bill, and is, the variance, if any, harmful to the opposite party in that it operates as a surprise to him? *Collins v. Beecher*, 45 Mich. 436.[1]

The plaintiff then testified to the money paid to the defendants upon the contracts, and that the lands were mostly timbered lands, and he made the arrangements to purchase them for the timber.

On cross-examination he testified that he went to lumbering on the lands in the winter of 1872 and 1873, and also that he leased the right of way for a horse railroad—a lumber railroad—to go across section 4, to Samuel Rogers. This lease was offered in evidence by defendants, and was dated July 12, 1872, for the term of 15 years. Plaintiff further testified that the railroad had been abandoned for years. He also testified that he had cut probably about 150,000 feet of white pine on sections 17 and 18, and took off four or five oak trees from section 4; that he never paid or offered to pay the defendants for the timber so taken off, and never paid or offered to pay the balance payable by the contracts.

It appeared on the trial that in the spring of 1873 the defendants were enjoined by the United States court from cutting timber on the land covered by the contracts, and that injunction was also served upon the plaintiff, in conse-

---

[1] See *Nugent v. Teachout, ante,* 571.

quence of which he quit lumbering upon the lands; that
plaintiff informed Dickinson that he was enjoined, and he
advised that he stop cutting, which he did; and that since
that time in 1873 the plaintiff has not been in the possession
of or occupied it, or in any manner been possessed of the
land.

The plaintiff's counsel then offered in evidence the original
patent of the United States to Mary Hannahs, covering the
land named in the contracts, for the purpose of showing
that the title was not in the Dickinsons, as plaintiff had
claimed; to which defendants' counsel objected, and stated
his reasons as follows:

"For the same reason that, under the admissions of the
plaintiff himself upon the stand, he cannot recover in this
action; for the reason that he admits that he cut off of sec-
tions 17 and 18 a matter of 150,000 feet of pine, and on sec-
tion 4 has cut some timber,—some ten dollars' worth,—and
has executed a lease for fifteen years of a certain other part
of it, which had not expired at the time of the commence-
ment of this suit; and for that reason it was impossible, at
the time this suit was commenced, for him to rescind and
place us *in statu quo;* and that under the testimony of the
plaintiff himself he cannot maintain this action.

"We object to it on the further ground that the plaintiff
admits himself, upon the stand, that he never tendered any
money to Mr. Dickinson on this contract, other than the pay-
ments already made, and that he never demanded a deed;
and that these defendants were under no obligation to make
him a deed, or perfect their title, until such time as he was
willing and made a tender of the purchase price.

"To make our objections cover all points, we repeat here
that we object to the introduction of this question of title,
or any other evidence in the cause, because, from the admis-
sion of Mr. Wright, the plaintiff, upon the stand, he was in
no position to rescind, and could not in law rescind, this
contract.

"*Second,* that from like admission of plaintiff on the stand
it appears that he has not in fact rescinded (that is, independ-
ent of the question whether he could or not).

"Now, provided he could rescind, the evidence shows that
he has not rescinded, and never gave any notice of resciss'on,

or has never taken any steps in fact to rescind before the commencement of this suit."

The court sustained the objection and excluded the testimony.

The plaintiff's counsel then made the following offer, namely:

"I desire to make this offer in this case: That we admit this plaintiff shall pay, and the defendants shall have deducted and allowed to them, the full amount of all timber or anything else that was taken from this land by the plaintiff, or by his agents, up to the commencement of this suit. And I now offer to show in the case, as we have started to show:

"1. That the defendants, at the time plaintiff demanded his money back, and before this suit, had no title to the land at the time the suit was commenced.

"2. That, at the time the plaintiff took the contract and paid the money on it, he supposed the defendants had a title to the land, and didn't know to the contrary until a short time before this suit was commenced; that at the time this suit was commenced he had fully investigated the title; that he then knew the owners of the land, and informed Mr. Dickinson who they were.

"3. That the land was bought for the timber only; that the plaintiff was restrained and enjoined from cutting or removing timber or trees from any of these lands, by an injunction issued out of the circuit court of the United States for the Western District of Michigan, in a suit wherein the creditors of one Timothy Morse (who in his life-time owned these lands, and the lands then belonged to his estate) were complainants, and the defendants were the Dickinsons and one Seaver, and that that suit was commenced, and an injunction issued, because of the fraudulent practices of the Dickinsons, the defendants in this suit; that Mr. William F. Dickinson, in collusion with the administrator of the estate of Timothy Morse, caused these lands to be sold, whereby he could get a title without paying any value for them, and it was through that title that they were pretending to claim when they were going to sell to plaintiff; that plaintiff investigated that matter at the time he investigated the title.

"4. That this injunction remained in full force up to the year 1878.

"5. That during the pendency of this injunction the fires

had destroyed the timber on these lands, a d without the fault or neglect of plaintiff.

"6. That since this suit was brought these defendants have sold and conveyed these lands to other parties."

*The Court.* "The objection to the offer of the patent, or other evidence of title in this case, will be sustained."

Plaintiff's counsel here offered in evidence the record and files in a case wherein the Dickinsons (these defendants) were plaintiffs, and Mr. Wright (this plaintiff) was defendant, being the case reported in 56 Mich. 42, which was objected to by defendants' counsel as irrelevant and immaterial, which objection was sustained by the court, and to which ruling the counsel for plaintiff did then and there except.

We think the court erred.

The plaintiff's cause of action was not entirely based upon the contracts.

In *Dickinson v. Wright*, 56 Mich. 42, these same contracts were in issue. The Dickinsons in that case brought suit to recover the balance of the money payable by the terms of these contracts, and failed, for the reason that the contracts were void under the statute of frauds, for the want of authority in Chase H. Dickinson to sign William F. Dickinson's name thereto. The invalidity of the contracts in question was settled by that adjudication; and it does not matter that this suit was first commenced. The fact that rendered the contracts invalid did not appear until upon the trial of that case. The issue, however, in this suit was broad enough to admit evidence of the invalidity of the contracts in question.

Purchase money paid for the purchase price of land can be recovered in an action for money had and received, whether the consideration fails for want of title or for want of a valid contract to convey.

In either case the purchaser must place the other party *in statu quo*, so far as is practicable for him to do so; and in either case the equities, so far as they can be measured by a

pecuniary standard, can all be settled and adjusted in the suit.

In this case there is no occasion to call for the interposition of a court of equity. There are no deeds to be surrendered up and canceled, nothing which is required to be perpetuated by a decree. All there is to be ascertained can be ascertained by a jury; and that is, how much in equity and good conscience ought the defendants to repay of the purchase money they have received. All benefits which the plaintiff has received will have to be deducted, and these can be ascertained and allowed for in a common law proceeding. The value of the timber cut and removed, and all other benefits which the plaintiff has derived from these contracts, can be adjusted in this action.

A void contract needs no rescission. But if these contracts were valid, and the plaintiff, either on account of want of title in defendants, or because they have placed it out of their power to perform, rescinded the contract, he could do so under the circumstances of this case without either tendering performance or placing the parties *in statu quo*. Through procrastination and delay, for which he was not in fault, the subject-matter of the contracts which formed his inducement to purchase has been destroyed. Under such circumstances, must he tender the purchase money? It would be unreasonable to require it. Must he place the defendants *in statu quo?* That is impossible.

Plaintiff entered into the contract in good faith, paid his money according to the agreement, and went on and severed 150,000 feet of pine, the timber which he bought for the purpose of manufacturing into lumber. He cannot restore the severed trees. It is impossible for him to restore the property in the same condition it was when he received it. The law does not require impossibilities to be performed. The only thing he can do is to restore its money equivalent, and that he offers to do.

In cases where, acting in good faith, property has been so

changed or lost that it cannot be restored in specie, and where its value is capable of being ascertained, a party entitled to may rescind a contract, although he cannot place the other party *in statu quo*. That is the law of reason, and it is the law of justice. If the current of authority is the other way, based upon technicalities, I cannot yield my assent to the doctrine.

As no rule of property is involved, and as the rights of the parties can be settled and determined in this equitable action, I must hold that the learned judge erred in excluding the testimony offered.

The judgment must be reversed, and a new trial granted.

SHERWOOD and MORSE, JJ., concurred.

CAMPBELL, C. J., did not sit.

