*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AARON TREDENICK and ALICA TREDENICK,

        Plaintiffs-Appellees,

v

NATIONWIDE AGRIBUSINESS INSURANCE
COMPANY,

        Defendant,

and

PRIME ADJUSTING SERVICE,

        Appellant,

and

FABIAN SKLAR KING & LISS, PC and SIDNEY
STATE BANK,

        Other Parties.

UNPUBLISHED
April 8, 2021

No. 349887
Kent Circuit Court
LC No. 17-011450-CB

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

      Following a fire at their farm, plaintiffs Aaron and Alica Tredenick submitted a claim with their insurer, defendant Nationwide Agribusiness Insurance Company (Nationwide). Nationwide failed to pay the claim and after several months the Tredenicks filed suit, which was eventually resolved by settlement. The settlement did not end the case, however, because several third parties, including appellant Prime Adjusting Service (Prime), asserted claims against the settlement

-1-

proceeds.[1]  Specifically, Prime maintained that it was entitled to 8% of the settlement on the basis of a contract with the Tredenicks for public adjuster services.  Following an evidentiary hearing, the trial court denied Prime's claim.  Prime now appeals as of right.  We affirm.

## I.  BACKGROUND

The Tredenicks owned and operated a commercial farm in Sheridan, Michigan; they also resided on the property and held title to it.  On March 20, 2017, a fire occurred in the farm's large pole barn.  The barn contained substantial amounts of farm equipment and some other personal property, much of which was destroyed.  The home was undamaged.

Six days after the fire, on March 26, 2017, James Orr, a licensed public adjuster and the owner of Prime, appeared at the Tredenicks' farm, offering to work on the Tredenicks' behalf as a public adjuster.  The Tredenicks declined Orr's services.  Nearly a month later, on April 22, 2017, Orr called the Tredenicks and asked if they would meet with him a second time and they agreed.  During this second meeting, Aaron signed a contract for public adjuster services with Prime.  The contract provided that Prime would receive 8% of the Tredenicks' recovery from their insurer, including a recovery obtained through a settlement.[2]  The contract signed by Aaron was not on a form approved by the director of the Department of Insurance and Financial Services (DIFS) as required by MCL 500.1226(4) of the Insurance Code of 1956, MCL 500.100 *et seq.*[3]  Specifically, the form used by Prime did not provide that "[a] contract which is executed within 48 hours after conclusion of the loss-producing occurrence shall be voidable at the option of the insured for 10 days after execution of the contract."  MCL 500.1226(4).  In addition, the contract did not contain notice of the right under the home solicitation sales act (HSSA), MCL 445.111 *et seq.*, to cancel a contract for goods and services within three days of execution, MCL 445.112(1), if "the solicitation is received by the buyer at a residence of the buyer, and the buyer's agreement  . . . is there given to the seller . . . ."  MCL 445.111(a).

After the agreement was signed, Prime submitted a proof of loss and supporting documentation to Nationwide.  Nationwide failed to pay the claim and the Tredenicks filed suit in December 2017.  About two months later, on February 22, 2018, the Tredenicks, acting through their attorney, sent Orr a letter terminating their contract with Prime.  In April 2018, following facilitative mediation, the Tredenicks and Nationwide reached a settlement agreement.

Because of Prime's and other claims against the proceeds, the trial court ordered that a portion of the settlement proceeds be held in trust by the Tredenicks' attorney pending resolution of those claims.  Prime sought 8% of the settlement proceeds on the basis of the contract.

---

[1] The claims of the other third-party claimants were resolved and are not relevant to this appeal.

[2] Typically, public adjusters, including Prime, charge 10% of the recovery, but Aaron negotiated the price with Orr and the contract was modified by hand to reflect the 8% fee.

[3] Although the form had not been approved by the DIFS, the contract signed by Aaron erroneously stated that it had been approved by the director of the DIFS.

Alternatively, Prime maintained that, even if the contract had been cancelled, Prime was entitled to reasonable compensation for the services it provided under a quantum meruit theory.

The trial court held an evidentiary hearing on Prime's claims, after which it found that the contract failed to comply with both MCL 500.1226(4) and the HSSA. The court further concluded that as a result of these statutory violations, the Tredenicks were entitled to void the contract, that the Tredenicks did not ratify the contract and that Prime could not maintain a claim for unjust enrichment as such a claim would circumvent the statutory requirements.[4]

## II. PUBLIC ADJUSTER CONTRACTS UNDER MCL 500.1226(4)

Prime concedes that its contract with Aaron did not conform with MCL 500.1226(4) as it did not include the mandatory provision that if the contract was signed within two days of the fire, the party retaining the public adjuster has 10 days to void the contract. Prime maintains, however, that the subject provision was immaterial because the contract was not signed within two days of the fire and so provided no rights to the Tredenicks under the facts of this case. But MCL 500.1226(4), a remedial statute intended to protect consumers, does not contain an exception for failing to include mandatory provisions on the grounds that they are not relevant to the particular insured. The statute provides:

> An adjuster for an insured *shall not* provide his or her services to a client until the adjuster has contracted in writing, on a form approved by the commissioner, with the insured or his or her authorized representative. A contract which is executed within 48 hours after conclusion of the loss-producing occurrence shall be voidable at the option of the insured for 10 days after execution of the contract. [MCL 500.1226(4) (emphasis added).]

Given the statute's absolute bar on the provision of services unless the contract form has been approved by the commissioner, we may not overlook the requirements of the statute even though the particular omission or error did not affect the rights of the insured. The use of the word "shall" in the first sentence of MCL 500.1226(4) makes clear that the necessity of a written contract "on a form approved by the commissioner" is mandatory. See *1031 Lapeer LLC v Rice*, 290 Mich App 225, 231; 810 NW2d 293 (2010). The statute places the burden of compliance on the adjuster, and its noncompliance, whether intentional or accidental,[5] gives the insured the right to void the contract.[6]

---

[4] We review de novo questions of law involving the interpretation of statutes and contracts. *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 402; 927 NW2d 717 (2018). A trial court's findings of fact are reviewed for clear error. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011).

[5] The omission in this case appears to have been wholly accidental.

[6] Prime argues that its failure to comply with MCL 500.1226(4) rendered the contract voidable, not automatically void from its inception. We need not definitively decide this issue, however,

-3-

III. RATIFICATION

Prime argues, however, that by accepting its work, the Tredenicks ratified the contract, rather than voiding it. We disagree and find no error in the trial court's conclusion that the Tredenicks did not ratify the contract. Ratification requires a "distinct act of ratification [by the party] as would establish, as between himself and [the other party], a mutuality of obligation." *Dickenson v Wright*, 56 Mich 42, 47; 22 NW 312 (1885). See also *Forge v Smith*, 458 Mich 198, 209 & n 27; 580 NW2d 876 (1998). "Ratification may be express or implied, so long as there is knowledge of the material facts relating to the initial contract." *Apfelblat v Nat'l Bank Wyandotte-Taylor*, 158 Mich App 258, 262; 404 NW2d 725 (1987). Acceptance of the benefit of a contract may evince ratification, but it "is not a *sine qua non* of ratification." *David v Serges*, 373 Mich 442, 444; 129 NW2d 882 (1964). Here, the Tredenicks did not know the material facts, i.e., that the contract failed to comply with MCL 500.1226(4) and was voidable, at the time Prime provided its services. An "acceptance" of services shall not be read as an implied ratification if the recipients were unaware that they had the right to void the contract. As noted, the Tredenicks testified that as soon as they learned that they were not bound by the contract, they had their attorney send a letter voiding it and no additional services were thereafter provided.

Moreover, presuming ratification solely because the Tredenicks received the benefit of Prime's services, and allowing Prime to receive compensation despite its uncured violation of MCL 500.1226(4), would effectively nullify the Legislature's decree that Prime could *not* provide services without a contract on a form approved the DIFS commissioner. See *Stokes v Millen Roofing Co*, 466 Mich 660, 672-673; 649 NW2d 371 (2002); *Paul v Graham*, 193 Mich 447, 451; 160 NW 616 (1916). See also *Epps v 4 Quarters Restoration, LLC*, 498 Mich 518, 550 & n 26; 872 NW2d 412 (2015). As a comparison, in *Paul*, 193 Mich at 451, the Michigan Supreme Court denied a commission for a real estate broker because, although the broker provided services under the contract, his contract was not in writing as required by the statute of frauds. The Court explained:

> It has been the rule of this court to permit recoveries for services actually performed under contracts void under the statute of frauds, either at the contract price or under a quantum meruit. If this rule is to be made applicable to this section of the statute of frauds [regarding real estate commissions], it would practically nullify the effect of the statute. Demands for commissions by real estate brokers are not usually made or pressed until the contract is performed. This being so, a recovery could be had, in nearly every instance, either at the contract price or under the quantum meruit. In order to give the act the effect which the Legislature evidently intended it should have, we have decided to hold that no recovery can be had under this section unless the agreement therefor is in writing. [*Id*.]

Likewise, in the case of a public adjuster providing services in violation of MCL 500.1226(4), a demand for payment would not usually be made until services are provided,

---

because we conclude that, even assuming a contract in violation of MCL 500.1226(4) is voidable and not void *ab initio*, the Tredenicks—as the party with the right of avoidance—did not ratify the contract but instead exercised their right to cancel the agreement with Prime.

-4-

and under Prime's reasoning, by the insured's acceptance of these services, the contract otherwise invalid under MCL 500.1226(4) would have been ratified. The result would be to effectively nullify the Legislature's decree that an adjuster *shall not* provide services to a client until the adjuster has contracted with the insured, in writing, on a form approved by the DIFS. We decline to presume ratification in such circumstances, and instead conclude that to effectuate the Legislature's intent, absent use of a form approved by the DIFS, Prime is not entitled to compensation for its services under the defective contract. See *Stokes*, 466 Mich at 672; *Paul*, 193 Mich at 451. Accordingly, the trial court did not err by denying Prime's demands to enforce the contract and to receive 8% of the Tredenicks' settlement agreement with Nationwide.

## IV. UNJUST ENRICHMENT

Finally, Prime argues that, even if it is not entitled to its 8% fee under the terms of the contract, it should be awarded reasonable compensation for the services it provided and that the trial court, therefore, erred by denying its claim for quantum meruit.

"In order to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 195; 729 NW2d 898 (2006). "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Id*. The amount of compensation that may be recovered is "the reasonable value of services rendered." *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 551; 487 NW2d 499 (1992).

Prime's claim for unjust enrichment fails. Given that Prime failed to meet the statutory condition precedent to perform public adjuster services, there is no inherit inequity in denying it payment for those services. Had the Tredenicks known of their right to void the contract, but purposefully waited until the services were provided before doing so, that would raise questions of fraud and bad faith which could support a claim that the later receipt of services was *unjustly* accepted and so give rise to a claim for quantum meruit recovery. However, Prime does not make this argument and we find there is no evidence to support such a claim.[7]

Affirmed.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[7] Because we conclude that Prime's violation of MCL 500.1226(4) precludes recovery under the facts of this case, we decline to address whether the Tredenicks had the right to cancel the contract under the HSSA. For the same reasons, we decline to address Prime's arguments regarding solicitations on Sundays and whether a potential misnomer in its name may be corrected.