## Sarah A. Colgrove v. John J. Solomon.

*Statute of frauds: Contracts for purchase of land: Agency: Authority.* An agent whose authority rests in parol cannot bind his principal by an oral contract for the purchase of land.

*Money had and received: Oral agreement to accept payment in land: Rescission.* Where in defense to an action for money had and received an oral arrangement is set up to accept in payment a deed of land, which arrangement was afterwards repudiated when performance was tendered, rulings designed to make the case turn upon the rescission by the plaintiff of the alleged arrangement are inappropriate, the real basis of the plaintiff's action being the lack of any binding contract to accept payment in land.

*Oral agreement to accept payment in land: Part performance: Payment of money: Preparatory acts.* The payment in part in money of an existing debt, in pursuance of an arrangement to accept payment partly in money and partly in land held by a third person, and a discharge by the debtor of a mortgage he held against the land in question, cannot operate as a part performance of an oral contract to accept the land as payment, such as to take the case out of the statute of frauds; such part payment was but payment of so much of an existing debt, and the discharge of the mortgage was not a fact of part performance at all, but merely a preparatory act to put the vendor in condition to tender performance.

*Deeds: Reservation of possession: Crops.* One who has agreed to accept in payment of a specified debt a deed of lands, with a reservation of possession in the grantor until the following October, is not bound thereby to accept a deed containing the additional reservation of all crops

growing thereon or produced before October; the right to sever and remove crops is distinct in its nature from the temporary privilege of retaining possession, and is not essential thereto, but of larger import.

*Heard June 20.    Decided October 10.*

Error to Kalamazoo Circuit.

*O. Tuthill* and *Arthur Brown,* for plaintiff in error, to the point that it was not competent to set up in defense to the action a partly performed parol contract to receive payment in land, cited: *Browne Stat. Frauds, § 451; O'Herlihy v. Hedges, 1 Sch. & Lef., 123; Kelley v. Webster, 12 C. B., 283; Freeport v. Bartol, 3 Greenl., 345; Patterson v. Cunningham, 2 Fairf., 512; Norton v. Preston, 15 Me., 16; Newell v. Newell, 13 Vt., 24; Kidder v. Hunt, 1 Pick., 331; Thompson v. Gould, 20 Pick., 338; Adams v. Townsend, 1 Met., 485; Eaton v. Whittiker, 18 Conn., 231; Thomas v. Dickinson, 14 Barb., 90; Abbott v. Draper, 4 Denio, 52; Seymour v. Davis, 2 Sand., 245; Henderson v. Hayes, 2 Watts, 148; Sailors v. Gambril, 1 Smith, Ind., 81; Davis v. Moore, 9 Rich. (S. C.), 215; Pike v. Morey, 32 Vt., 37; Hunt v. Coe, 15 Iowa, 197; 3 Pars. Con., 350; Scott v. Bush, 26 Mich., 420; Cook v. Bell, 18 Mich., 393;* that the acts of part performance, to be sufficient, in equity even, to authorize the specific enforcement of a parol contract to purchase land, must be directly in prejudice of the party doing the act, and not ancillary or preparatory merely, nor such as can be compensated in damages: *Browne Stat. Frauds, § 460; 3 Pars. Cont., 60;* that what Solomon did in performance of the agreement was in no way to his prejudice beyond what an action for damages would fully remedy, and such mere preliminary negotiations and arrangements as conferred no rights and constituted in no sense a binding contract, at least without the subsequent assent of both parties: *26 Mich., 420; 10 Mich., 219; 11 Mich., 494; 14 Mich., 238; 20*

*Mich.*, *410; 38 Penn.*, *147;* that the doctrine of part performance is held in disfavor, and will not be extended: *German v. Machin, 6 Paige, 288;* that all attempts to make the rule of part performance operate at law the same as in equity have wholly failed: *3 Pars. Cont., 59; Davenport v. Mason, 15 Mass., 85; Baldwin v. Palmer, 10 N. Y., 232; Cagger v. Lansing, 23 N. Y., 550; Day v. N. Y. C. R. R. Co., 51 N. Y., 591; Dung v. Parker, 52 N. Y., 497.*

*Severens, Boudeman & Turner,* for defendant in error, argued that the discharge of the mortgage on the Alanson land by defendant was such a part performance on his part as took the case out of the statute of frauds and made the contract a valid one and binding upon the plaintiff; and to the point that any thing done under the contract which would render it impracticable to place the parties in *statu quo* is a sufficient part performance to take the case out of the statute, on the ground that to refuse performance would amount to a fraud, cited: *Adams Eq., 202, and cases cited; Browne Stat. Frauds, § 448; Richmond v. Foote, 3 Lans., 244; Lowry v. Tew, 3 Barb. Ch., 413;* that defendant, having discharged the mortgage, could not be restored to his former position by rescission of the contract; that the plaintiff could not rescind the contract, even had defendant neglected to deliver any deed at the very time agreed upon, time not being an essential element of the contract; and that it is a well established rule that a contract cannot be rescinded by one party for the fault of the other, unless both can be placed in the same situation in which they stood previous to the contract: *Chance v. Comr's of Clay Co., 5 Blackf. (Ind.), 441; Calhoun v. Davis, 2 Ind., 532; Peter v. Hunders, 19 Ind., 93; McGunn v. Callman, 18 Ind., 128; Moore v. Rare, 1 Iowa, 198; Griffith v. Ford Co. Bank, 9 Gill & J. (Md.), 142; Brown v. Witter, 10 Ohio, 142; Barrett v. Stanton,*

*2 Ala., 181; Peters v. Roberts, 6 Ala., 9–11; Conner v. Henderson, 15 Mass., 319; Hammond v. Buckmaster, 22 Vt., 375; 2 Pars. on Cont. (5th ed.), 678–9; Burge v. Cedar Rapids, etc., R. R. Co., 32 Iowa, 101; Jarrett v. Morton, 44 Mo., 275; Ellington v. King, 49 Ill., 449;* that plaintiff, if entitled to rescind, must notify defendant of his intention so to do before the latter performs his part of the contract: *Hooper v. Taylor, 4 E. D. Smith, 486; Carney v. Newberry, 24 Ill., 203; Mallin v. Bloomer, 11 Iowa, 360; Davis v. Downs, 4 Mich., 350.*

GRAVES, J :

Mrs. Colgrove brought her action for money had and received, to recover a sum she had paid Mr. Solomon as purchase money on a land trade which had been rescinded, and he was allowed to succeed before the jury under a defense grounded upon a subsequent agreement, and things done in connection with it, to repay her partly in cash and partly in land.

She now asks a review of the proceedings. A reference to the main circumstances is necessary. She agreed to buy of Solomon eighty acres of land for two thousand five hundred dollars, and on March 3, 1873, he deeded to her. She gave back certain securities and paid one thousand five hundred dollars in cash. She soon found cause to be dissatisfied with the title, and by mutual consent the trade was canceled. She reconveyed, but Solomon did not restore the money. He claimed that he could not then command it, and proposed to secure by mortgage the refunding of it. This proposal fell through. He then suggested as an expedient, to pay four hundred dollars in cash and the residue of eleven hundred dollars in a piece of land owned by one Mrs. Alanson. The parties were at Dr. Harrison's, and the negotiation and bargaining were entirely oral. The doctor seems to have been a trusted acquaintance of Mr.

Solomon and a friendly adviser of Mrs. Colgrove.  Both parties seem to have looked somewhat to him to aid in bringing about an adjustment, and Mrs. Colgrove sought his help and advice more or less in the matter.  His intervention appears to have been merely casual, and in the spirit of friendly accommodation only.  He had no written power from either side.

The Alanson parcel was burdened with two mortgages, one belonging to Solomon, and one for five hundred dollars owned by a third party, and Solomon desired that possession of the land should be detained until the first of October following.  The property itself was valued at sixteen hundred dollars subject to such detention, and at eleven hundred dollars subject both to such detention and the mortgage for five hundred dollars.  It was therefore considered that the land burdened with this last mortgage, and with the right of possession in another until October, was equivalent to eleven hundred dollars.  In this state of things it was orally agreed that Solomon should pay Mrs. Colgrove four hundred dollars in cash, and cause the Alansons to deed to her the parcel in question, subject to the mortgage for five hundred dollars, and with a reservation of possession until October.

Solomon paid the four hundred dollars in cash, and acknowledged satisfaction on the record of his mortgage on the Alanson property, and in a short time he forwarded to Doctor Harrison a deed made by the Alansons.  This deed was attested by only one witness, and contained a reservation of possession until October, and a further one of all crops growing at the date of the deed and also of all crops produced before October.  The doctor objected to the deed on the ground that it had but one witness, and pointed out some trifling inaccuracies besides, but said nothing about the reservation of the crops.  He returned the deed and advised the making of a new one.  This instrument was therefore not accepted by any body.  Mrs. Colgrove presently decided that she would not carry out the verbal agreement and would

not take the Alanson land. She so wrote to Dr. Harrison. Following this, a second deed from the Alansons to Mrs. Colgrove was sent by Solomon to Dr. Harrison. This instrument contained the same reservation in regard to crops as the first. Doctor Harrison sent it to Mrs. Colgrove and she refused to accept it, and handed it to her attorney. The proof is clear and uncontradicted that she did not and would not accept it. If the court erred in permitting the defense tendered by Solomon to prevail, it is then evident that Mrs. Colgrove was entitled to recover the money remaining back. Indeed, this is not disputed.

We think that the main rulings of the circuit judge proceeded on mistaken views of the law applicable to the case, and were plainly erroneous and misleading. We shall not take up separately the various propositions stated and refused. We may observe, however, that, among other matters, he authorized the jury to imply from the evidence that Doctor Harrison was Mrs. Colgrove's lawful agent to convert without writing her verbal and invalid bargain into one valid and obligatory; and further, that he gave the jury to understand that in view of the bargain and her situation in relation to it, she would be bound by it unless there appeared a state of facts amounting to a rescission of it. Now, it is entirely clear that since her bargain was an oral one it was not binding upon her at all. And it is equally clear that the acts and sayings of Doctor Harrison were not superior in force to her own verbal proceedings. He had no written power and entered into no writing. If in any proper sense he was her representative to make or validate any contract, he was no more able without writing than she was in person to bring her into binding contract relations as vendee.

The rulings in respect to rescission were wholly inappropriate. The ground of Mrs. Colgrove's objection or answer to the defense was not that she had rescinded or attempted to rescind any contract for the Alanson land.

Her position was, that she had never entered into any

valid contract relations with Mr. Solomon for the purchase of that property. She insisted that her verbal bargain never became a contract, and that there was nothing to rescind, and in this she was correct.—*Scott v. Bush, 26 Mich., 418; S. C., 29 Mich., 523.*

In support of the defense, it was ruled below, and is now urged, that the payment of the four hundred dollars by Solomon, and the discharge of his mortgage, were acts of part performance to preclude the setting up the statute of frauds in a court of equity, and that the same doctrine is legitimate in the equitable action for money had and received in a court of law. Whether the doctrine alluded to is or is not proper in such a case, is a point not material. The facts mentioned are not within it. The payment of the four hundred dollars was only payment of so much of an honest debt already existing and already due.

In paying it, Solomon did nothing more than he was strictly bound both by law and equity to do independently of his oral agreement, and he cannot be heard to say, in any forum, that such payment will operate as a fraud upon him in case his verbal agreement to pay the rest of his debt in land is avoided under the statute of frauds.

His discharge of record of his own mortgage on the Alanson land was not a fact of part performance at all. The land was considered worth eleven hundred dollars if received subject to the other mortgage of five hundred dollars and subject to detention of possession until October, and it was agreed to be conveyed in that shape, and as equivalent to eleven hundred dollars of the debt he owed Mrs. Colgrove. In what manner he should proceed to get the title in the condition in which he agreed it should pass to her, was a matter of perfect indifference on her part. It was something resting entirely with him, and important only to him. It was not an element of her bargain. He might collect his mortgage, or exchange it for other security, or remove it in any special way. The removal of it was an act preparatory to steps in the execution of his bargain. It was a measure he found it

necessary to adopt in order to get ready to enter upon performance of what he had promised, and not an act of part performance of the promise itself. He might urge with better reason that his employment of a scrivener to draw the deed, or his getting Mrs. Alanson to execute and acknowledge it, or his witnessing it, was an act of part performance.

Again, if we look at the act in view of the use now sought to be made of it, there is ground for saying it could have no greater or different force in the way of part performance than the payment of money, and that so considered it could not avail to prevent the application of the statute.

As previously stated, the first deed for the Alanson land was never accepted by any one, and was never considered as having any force as a grant. It was returned and retained. Moreover, it was defective by reason of insufficient attestation, and was not in accordance with the verbal bargain. The second deed was never accepted. Upon this the evidence was clear and uncontradicted, and there were no facts to disable Mrs. Colgrove from asserting the right to refuse it as a consequence of the nullifying operation of the statute of frauds.

But she was relieved from all obligation to accept it for the further reason that the insertion of a provision to reserve the crops was a material departure, and to her prejudice, from the terms and sense of the oral bargain.

The position of the circuit judge, and which is attempted to be maintained here, that the term of the verbal bargain for keeping possession until October included a right to the crops, is certainly unsound, and it seems probable that it was so considered by the grantors, since in framing the deed they were careful to insert a distinct reservation of the crops as well as one for possession.

The right to sever and remove the crops growing at the time of deeding, and likewise to crop the land during the season, was a valuable right. The possession of it bore

COLGROVE *v.* SOLOMON.

upon the valuation. It was not only distinct in its nature from the temporary privilege to retain possession, and not essential thereto, but of larger import under the circumstances, and there can be no question that the more important right was not included. In view of the facts, the stipulation for the privilege of possession until October, the valuation of the premises at eleven hundred dollars subject to. that and to the mortgage of five hundred dollars, and the circumstance that nothing was said in the bargain about reserving a right to take crops, or any other right, amounted to a tacit exclusion of the right claimed.

There are numerous exceptions calling for an application of the rule prescribing the limits of cross-examination, and much space is occupied in the discussion of the subject. As there is no reason to suppose these matters can have any future importance in the cause, we shall not dwell upon them. The practice has been declared in former decisions, and it does not seem to have been misapplied in those particulars in which the evidence was allowed, but we are inclined to think the court miscarried in excluding the question put to Mr. Solomon. In saying this we do not intend to be understood as holding the evidence was admissible against other objections. It is manifest from what we have said in regard to branches of the defense, that much of the evidence was improper for reasons entirely distinct from the rule of cross-examination in question.

The views already expressed are believed to cover all the essential questions in the cause, and they necessitate a reversal, with costs, and a new trial.

The other Justices concurred.