EBER L. KELSEY v. PATRICK H. McDONALD AND FRANK C. McDONALD.

*Statute of frauds—Contract for purchase of land—Delivery of deed —Action to recover amount paid.*

1. In this case plaintiff sued defendants to recover $5,000 which he had paid on an *oral* agreement for the purchase of certain lands, and a verdict was directed in his favor. The defendants contended that the contract was taken out of the statute of frauds by such payment, and the acceptance of a deed of the lands, and by taking possession of the same; and the Court, on a review of the testimony, find that none of the acts of the parties were sufficient to avoid the statute, and affirm the judgment. An examination of the opinion is essential to a correct understanding of the case.

2. The delivery of a deed which does not conform to an *oral* agreement for the purchase of the lands conveyed is not a sufficient

written memorandum to avoid the statute of frauds, conceding that the delivery of one conforming to such agreement will have that effect, which is not admitted.

3. The statute of frauds was designed to prevent disputes as to *what* the oral contract sought to be enforced *was*.

4. Upon the facts in this case (see opinion), as long as plaintiff had not accepted the deed from defendants, the contract for the purchase of the lands described therein was incomplete, and rested in parol, and plaintiff's intention to accept it, even if expressed orally, and the payment of money on the contract, and the taking of possession of the lands under it, did not complete the contract or pass the title to plaintiff, and until he accepted the deed he was at liberty to take advantage of the statute and recede from the bargain, and a payment of the entire consideration would not have prevented his so doing.[1]

Error to Cheboygan. (Ramsdell, J.) Argued June 19, 1889. Decided July 11, 1889.

*Assumpsit.* Defendants bring error. Affirmed. The facts, and points of counsel *passed* upon by the Court, are stated in the opinion.

*Geer & Williams* and *George W. Bell,* for appellants.

*Watts S. Humphrey,* for plaintiff.

MORSE, J.   Charles E. Kelsey, a brother of the plaintiff, and acting in his behalf, in October, 1887, entered into an oral agreement with the defendant Patrick H. McDonald for the purchase of certain lands owned by the defendants, and situated in Presque Isle county. The purchase price was to be $9,500, to be paid at the Cheboygan

[1] See *Lamb v. Hinman,* 46 Mich. 116, where it is held that the reason why taking possession (of land) under an oral contract (for its purchase) is recognized as a ground for specific performance, when payment of the purchase price is not, is that in one case there is no standard for the estimate of damages when the contract is repudiated, and in the other there is a standard that is definite and certain.

See, also, *Peckham v. Balch,* 49 Mch. 181, *holding* that it is not payment *alone* that will take a case out of the statute, but *this,* with *possession* and *acts* done as owner in reliance thereon that cannot ordinarily be compensated in damages, which entitles a party to an enforcement of a verbal agreement relating to the sale of lands

Bank when the defendants should execute and deposit their warranty deed for the lands with one H. A. Wetmore at said bank. The deed was deposited at the bank, but the consideration named in the same was $9,000 instead of $9,500. Kelsey objected to this deed because of such variance, and also for other reasons; one being that an abstract of title was also to be furnished. To make the difference in the consideration, a bill of sale, naming $500 as its consideration, was made by the defendants to the plaintiff, and covering and conveying the "down timber" on the premises. Charles E. Kelsey claims that this bill of sale was never delivered. After the deed was made and deposited, Charles E. Kelsey paid for plaintiff $5,000 to the defendants.

The plaintiff afterwards became dissatisfied with his bargain, and this suit was brought in the circuit court for the county of Cheboygan to recover the money paid, claiming the contract to be void under the statute of frauds.

The circuit judge, upon the trial, directed a verdict for the plaintiff, and he had judgment in the sum of $5,205.

This action of the circuit judge is the only point of contention in this Court.

The counsel for the defendants claim that the facts in the case take the contract out of the statute of frauds, and that he case should have been submitted to the jury upon the facts as claimed by them.

It is contended that, after the deed was deposited with Wetmore, conforming with the oral agreement except as to the amount named as its consideration, the making of the bill of sale to remedy this was agreed to by Charles E. Kelsey; and also that said Kelsey took the deed away from Wetmore, where it was deposited, and, with full knowledge of this variance in the recital of the consideration, paid $5,000 upon the contract, and agreed to pay the balance of the purchase price as soon as an abstract of the land was furnished by the defendants; that defendants afterwards furnished the

abstract, which showed a clear and perfect title in the defendants; that Charles E. Kelsey never returned the deed to Wetmore, but left it with Mr. Perkins, in the office of Humphrey & Perkins, attorneys at law, at Cheboygan ; that this was a virtual acceptance of the deed, and the title thereby passed. It is urged that if these facts had been submitted to and found by the jury it would have justified a verdict for the defendants.

It is also claimed that Kelsey bought camp supplies, and took possession of the lumber camps which had been used by the defendants the previous winter in lumbering upon a portion of the lands. He, Charles E. Kelsey, had men at work at these camps for eight or ten days getting ready to lumber the lands. A survey of the lands afterwards showed these camps to be on other lands, and not on those sold or contracted to plaintiff, but defendants' counsel claim that this was a disputed question as to the location of these camps, which should have been submitted to the jury; and that there is no doubt but Kelsey intended to take possession of these lands· under the deed when he took possession of the camps.

They also contend that the defendants complied with their part of·the contract by executing a deed of the premises, depositing it, together with the deeds to them from their grantors, James and Phelps, with Mr. Wetmore, as they had agreed to do; and that this deed itself was such a written memorandum, subscribed by the parties *by whom the sale was made,* as would take it out of the statute of frauds.

We do not think the oral agreement was taken out of the statute by any act or acts of the parties.

In the *first* place, it is conceded that the deed, as executed and delivered, did not embody the terms of the oral contract, in so much as it did not properly recite the price to be paid for the land. This, of itself, would be a sufficient answer to the claim that the execution of the deed and its delivery to

Wetmore was a sufficient written memorandum to avoid the statute of frauds, if we were to admit that the execution and delivery of a deed correctly embodying the oral agreement would be sufficient to take it out of the statute, which we are not prepared to do.

*Second.* No abstract was delivered with the deed to Wetmore, which plaintiff claims was a part of the parol contract.

*Third.* There never was any acceptance of the deed by plaintiff's agent, nor any evidence tending to show such acceptance.

It is clear from all the evidence that the deed was taken from Wetmore by Charles E. Kelsey for the purpose of having it examined, to see if it was all right, and according to the oral arrangement; and that he found fault with it because the consideration was $9,000, instead of $9,500.

He seemed to be satisfied when Mr. Perkins told him the bill of sale would make the matter right, but he did not accept the deed, and the bill of sale was never delivered to him, nor is there any evidence that he ever saw it.

Mr. Perkins testified that Frank C. McDonald, one of the defendants, came into the office while the deed was in his possession, about an hour after Kelsey brought it in. Perkins told him that Kelsey wanted an abstract, and McDonald finally said they would furnish one. While McDonald was there, Kelsey came in, and said he had made up his mind to pay $5,000 on the contract.

It seems that then and there a new oral arrangement was made as to the delivery of the deed ; that defendants were to obtain the abstracts of title, and, when the abstracts came, Kelsey was to pay the balance of the purchase price, $4,500, and Perkins was then to deliver the deed to Kelsey.

Frank C. McDonald substantially admits in his testimony, not only that he agreed to get the abstracts, but that he told Kelsey it would take a few days to get them, and that he

wrote immediately thereafter to Rogers City for them. He also admits that Perkins told him that Kelsey had paid $5,000, and would pay the balance when he received the abstracts, but denies that he stated either to Perkins or Kelsey that he would leave the deed in Perkins' hands to deliver to Kelsey when the abstracts came and the $4,500 was paid. Yet it is clear from his evidence, as well as the others, that it was understood by all of them that the transaction was not to be closed, or the deed delivered, until the abstracts came and the $4,500 was paid.

It is true that the plaintiff failed to fulfill this agreement, but it was an oral one, and within the statute of frauds; and it is certain that the title to these lands did not pass to plaintiff by anything that was done in Perkins' office.

That the defendants understood that Kelsey was not to receive the deed and pay the $4,500 is further evidenced by the fact that when they tendered the deed afterwards, and demanded the $4,500, they tendered also abstracts of title.

Perkins afterwards returned the deed to defendants at Kelsey's direction.

We therefore find in this case a dispute as to what the oral contract was in the first place; the defendants denying that they agreed to furnish an abstract, and the plaintiff insisting that they did. The statute of frauds was designed for the express purpose of preventing such disputes.

Then we find another oral agreement afterwards made, which is again somewhat in dispute, as to the delivery of the deed; the defendants insisting that the deed, while in Perkins' hands, was in reality already delivered to Kelsey, and the plaintiff insisting that by the defendants' own proposition it was to be left in Perkins' hands, to be delivered to Kelsey when the abstracts came and the $4,500 was paid.

There is no doubt, as claimed by defendants' counsel, from

76 MICH.—13.

the evidence, that Charles E. Kelsey intended to accept this deed as it was, when the abstracts came, and that he paid $5,000 upon the contract, and undertook to take possession of the lands, and supposed he had done so.

But before the abstracts came he became dissatisfied with his purchase, as he says, because he had been defrauded by misrepresentations as to the amount of timber on the lands, and refused to take the deed.

These facts, however, have no tendency to take the case out of the statute of frauds. As long as he had not accepted the deed, the contract was incomplete, and rested in parol, and his intention to accept it, even if expressed orally, and the payment of money on the contract, and the taking of possession of the land under it, did not complete the contract, or pass the title to him. There yet remained the delivery and acceptance of the deed and the payment of the $4,500. And at least until he accepted the deed he was at liberty to take advantage of the statute, and recede from his bargain.

The payment of the whole of the consideration would not have been sufficient to take the case out of the statute. *Scott v. Bush,* 26 Mich. 420; *Peckham v. Balch,* 49 Id. 181 (13 N. W. Rep. 506); *Lamb v. Hinman,* 46 Id. 116 (8 N. W. Rep. 710).

And the possession taken by Kelsey, even if the camps were on the lands contracted for, instead of being, as they probably were, on lands not owned by defendants, was not such a part performance as would avoid the statute. There was nothing done on the lands, if anything was done, that could not be compensated in an action for damages. *Lamb v. Hinman,* 46 Mich. 116 (8 N. W. Rep. 710); *Dragoo v. Dragoo,* 50 Id. 577 (15 N. W. Rep. 912); *Kinyon v. Young,* 44 Id. 342 (6 N. W. Rep. 836); *Dickinson v. Wright,* 56 Id. 42 (22 N. W. Rep. 312).

The judgment of the court below is affirmed, with costs.

The other Justices concurred.