## ADAMS *v.* EDWARD M. BURKE HOMES, INC.

### OPINION OF THE COURT

1. CORPORATIONS—ANNUAL REPORTS—DUTY TO FILE—FAILURE TO FILE—SUSPENSION OF CORPORATE POWERS.

   Corporation which neglects or refuses to make and file the annual reports required by statute is precluded during the period of such default from enforcing any contract made by it while in default (CL 1948, § 450.87).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 7, 9, 10] 18 Am Jur 2d, Corporations § 174.
[2, 6, 8] 17 Am Jur 2d, Contracts § 512 *et seq.*
[3] 17 Am Jur 2d, Contracts § 448 *et seq.*
[5] 19 Am Jur 2d, Corporations § 1653 *et seq.*

2. CONTRACTS—RESCISSION—RESTORATION OF STATUS QUO.

Party to a building contract, who has received a deposit from the other party, upon rescission of the contract must return the deposit less that part which represents expenditures made by him pursuant to the contract and which are of no further value to him, thereby restoring the *status quo.*

CONCURRING OPINION
LEVIN, P. J.

3. CONTRACTS—ABILITY TO PERFORM—ANTICIPATORY BREACH.

*Evidence that there was a possibility that defendant might not be able to perform, in that it failed to immediately obtain clear title to the lots on which it agreed to build a house for plaintiff and that plaintiff had cause for concern because defendant was financially in jeopardy, is insufficient to establish anticipatory breach.*

4. SAME—CORPORATIONS—SUSPENDED CORPORATE POWERS—VALIDITY OF CONTRACTS.

*Contract entered into by a corporation while its corporate powers are suspended for failure to file reports and pay its fees, as required by statute, is voidable, and its provisions may not be affirmatively relied on by the delinquent corporation (CL 1948, § 450.87).*

5. SAME—CONTRACTS WITH CORPORATIONS WHOSE POWERS ARE SUSPENDED—REMEDIES.

*One who makes a contract with a corporation at a time when the corporation's corporate powers are suspended for failure to file annual reports may either enforce the terms of the contract or rescind it.*

6. SAME—RESCISSION—RESTORATION OF THE STATUS QUO.

*An essential prerequisite to the rescission of a contract is the restoration of the* status quo *between the parties; therefore when the purchaser under a building contract declares it invalid because the seller's corporate powers were suspended at the time the contract was entered into, the seller may, so as to restore the* status quo, *retain so much of the deposit money paid by the purchaser as represents expenditures made by him pursuant to the contract and which are of no further value to the seller.*

7. CORPORATIONS—OFFICERS—DUTY TO FILE ANNUAL REPORTS.

> *Evidence that a corporation failed to file its required annual report with the State in a certain year, and testimony by the corporation president that he had no recollection of any effort to see to its filing, are sufficient to permit the trier of fact to infer that failure to file was the result of the neglect of the corporate officers.*

8. WORDS AND PHRASES—DEBT—DEFINITION—DUTY TO RETURN DEPOSIT MONEY.

> *Liability to return deposit money paid under a contract which was rescinded is a debt in the context of statute which makes officers of corporations failing to file annual returns liable for its debts, even though the debtor may have a right to retain part of the deposit spent on the performance of the contract before it was rescinded (CL 1948, § 450.87).*

9. CORPORATIONS—DUTY TO FILE ANNUAL REPORTS—CONTRACT ENTERED INTO DURING DELINQUENCY—DEBTS—DEPOSIT ON CONTRACT.

> *A debt, consisting of deposit money received under a contract which was rescinded, arose during the period in which a corporation was delinquent in filing its annual reports if the contract that settles the rights and obligations of the parties in the deposit money was made by such corporation during such delinquency, and is a liability for which its responsible officers are personally liable (CLS 1961, § 450.87)*

10. SAME—DUTY TO FILE ANNUAL REPORTS—NEGLECT OF OFFICERS—CONTRACTS MADE BY CORPORATION DURING DELINQUENCY—PERSONAL LIABILITY OF OFFICERS.

> *The fact that a corporation contracted a debt while it was winding up its affairs instead of while it was in normal course of business does not remove the personal liability of the officers of the corporation for the debt if they would otherwise be personally liable (CL 1948, § 450.87).*

Appeal from Common Pleas Court of Detroit, Vokes (David C.), J. Submitted Division 1 November 7, 1967, at Detroit. (Docket No. 1,930.) Decided December 2, 1968. Rehearing denied March 8, 1969.

Declaration by Sylvester Adams, Jr. and Louise Adams against Edward M. Burke Homes, Inc., a

Michigan corporation, Edward M. Burke, Jr., Francis E. Griffin, and Carl S. Green to recover a deposit made on a contract to build a home. Judgment for defendant. Plaintiffs appeal. Reversed and remanded.

*Keith, Conyers, Anderson, Brown & Wahls,* for plaintiffs.

*Harold L. White,* for defendants Edward M. Burke Homes, Inc. and Edward M. Burke.

*William L. Colden,* for defendant Francis E. Griffin.

QUINN, J. Plaintiffs brought an action in common pleas court of Detroit to recover from defendants' the amount of a deposit plaintiffs made on a contract with the corporate defendant, which was not fulfilled by the corporation. In count 1 of their declaration, plaintiffs sought recovery of $3,000 on the theory that the contract was void and unenforceable. In count 2, they sought recovery of $2,800. The latter figure mistakenly represented the deposit less $300 stipulated damages provided for in the contract. The individual defendants were joined under the provisions of CL 1948, § 450.87 (Stat Ann 1963 Rev § 21.87). Plaintiffs appeal from a judgment of no cause of action in favor of all defendants.

Plaintiffs contracted with the corporate defendant for the construction of a home on land to be acquired for them by the builder. At the time of the contract, the powers of the corporate defendant were suspended for failure to file its annual report and pay fees as required by section 450.87, *supra.* Eventually, plaintiffs purchased property and had another builder construct their home. The corporate defend-

ant claimed at trial and claims here that it expended more than $3,000 for the benefit of plaintiffs and pursuant to contract prior to the time plaintiffs started acting for themselves. The trial judge made no finding on this point, and the record before us is such that we are unable to make such a finding.

Section 450.87, *supra,* provides:

"(1) If any corporation neglects or refuses to make and file the reports and/or pay any fees required by this act within the time herein specified, and shall continue in default for 10 days thereafter, unless the secretary of state shall for good cause shown extend the time for the filing of such report or the payment of such fee, as the case may be, as provided in section 91 of this act, and (2) if such corporation shall continue in default for 10 days after the expiration of such extension, its corporate powers shall be suspended thereafter, until it shall file such report, and it shall not maintain any action or suit in any court of this state upon any contract entered into during the time of such default; but nothing herein contained shall prevent the enforcement of such contract against the corporation by the other party thereto, and during the period of such suspension such corporation may exercise the power of disposing of and conveying its property and may settle and close its business. Any officer or officers of such corporation so in default who has neglected or refused to join in making of such report and/or pay such fee shall be liable for all debts of such corporation contracted during the period of such neglect or refusal."

The contract was unenforceable by the corporation so long as it was in default. *Industrial Coordinators, Inc.,* v. *Artco, Inc.* (1962), 366 Mich 313. The corporate defendant is still in default and plaintiffs do not seek to enforce the contract, but by this action they rescinded. Among other things, rescission in-

volves a restoration of the *status quo, Wall* v. *Zynda* (1938), 283 Mich 260, and as to both parties. *Kundel* v. *Portz* (1942), 301 Mich 195, 210. The insufficiency of the record prevents us from determining what is *status quo* in this case, but the corporate defendant shall be entitled to retain that part of the $3,000 which represents expenditures pursuant to the contract and which are of no further value to that defendant.

There is sufficient evidence in the record to support a finding that the failure to file the report was due to the neglect of the officers at the time. Except for defendant Griffin, such a finding supports the liability of the individual defendants under the statute, *supra*, if what is involved here is a debt contracted during the period of neglect.

In *Lockhart* v. *Van Alstyne* (1875), 31 Mich 76, 78, "debt" is defined as follows:

"Liabilities of a company which may give causes of action against it and result in judgments are not within the statute unless they constitute present debts. A debt is that which one person is bound to pay to another, either presently or at some future period; something which may be the subject of a suit as a debt, and not something to which the party may be entitled as damages in consequence of a failure to perform a duty or keep an engagement."

This supports our holding that involved here is a debt contracted during the period of neglect.

The trial judge dismissed the case as to defendant Griffin before he rendered an opinion on the principal issues in the case. That determination is supported by the record. Mr. Griffin had tendered his resignation as secretary of the corporation but not as a director before he departed in 1957 for a 5-year assignment in Africa. Although the record

does not indicate that Griffin resigned as a director, directors have no personal liability under the statute, *supra.*

The contention of the corporate defendant and defendant Burke that this action is barred by the 2-year statute of limitations found in CL 1948, § 450.90 (Stat Ann 1963 Rev § 21.90) is not properly before us. Rule 9, § 4, common pleas court, requires that such an affirmative defense be plainly set forth in the defendant's answer. This defense was first raised below during final argument and the trial court did not rule on it.

Reversed and remanded for a determination of the amount the corporate defendant should be required to repay to plaintiffs and for a determination of the personal liability of the individual defendants, except Griffin. Plaintiffs may recover costs.

J. H. GILLIS, J., concurred with QUINN, J.

LEVIN, P. J. (*concurring*). Plaintiffs Sylvester Adams, Jr. and Louise Adams, his wife, seek a money judgment against Edward M. Burke Homes, Inc., a Michigan corporation, and the individual defendants. Plaintiffs assert that Burke Homes' alleged indebtedness to the plaintiffs was a debt contracted during the period Burke Homes was in default in filing its 1962 and subsequent annual reports and that under section 87 of the Michigan general corporation act (CL 1948, § 450.87 [Stat Ann 1963 Rev § 21.87]) the individual defendants, who are claimed to have been officers and directors of Burke Homes during such period of delinquency, are personally liable to pay such indebtedness.

I.

## The Facts

Before any default in filing annual reports, the plaintiffs and Burke Homes commenced negotiations with a view to Burke Homes acquiring 3 particular vacant lots and constructing a residence for the plaintiffs on them. Before a written agreement was entered into between the parties, and before Burke Homes was in default, the plaintiffs paid Burke Homes a deposit of $1,000.

After the corporation's powers were suspended by reason of default in filing the 1962 annual report due May 15, 1962,[1] the parties signed 3 separate written agreements. The first agreement was dated July 3, 1962, and stated a price of $35,500, $3,000 down, the remaining $2,000 of the down payment to be paid upon receipt of mortgage commitment. Before the $2,000 was paid, a second written agreement was signed by the parties, dated July 9, 1962, this time at a price of $33,340, $8,840 down. Thereafter the $2,000 additional deposit money was paid by the plaintiffs to Burke Homes. The third written agreement, dated January 21, 1963, restated the $33,340 price, but increased the down payment to $10,640.

The plaintiffs became dissatisfied with Burke Homes' failure to commence construction and engaged legal counsel. On May 14, 1963, Burke Homes wrote the plaintiffs "pursuant to the request" of plaintiffs' counsel to explain the disposition that Burke Homes had made of the $3,000 deposit paid by the plaintiffs. The letter stated that $2,700 had been expended for "deeds to lots," $400 for plans and specifications and that an additional $83.50 had

---

[1] CLS 1961, § 450.82. Burke Homes' charter subsequently became void under the provisions of CL 1948, § 450.91 (Stat Ann 1963 Rev § 21.91) for failure to file the 1962 and 1963 reports.

been spent on title and financing applications. The letter offered to proceed with construction.

On July 3, 1963, the plaintiffs purchased the 3 lots on which their house was to be built from the titleholder for $2,592.21 and caused a house to be constructed on the lots for $26,000 under the supervision of Burke Homes' former building superintendent. The house so constructed was built from plans other than the one prepared by Burke Homes. It was a smaller house than the one Burke Homes had agreed to build for the plaintiffs.

## The Declaration

Plaintiffs' declaration contained 2 counts. Count I sought recovery of $3,000 on the theory that the July 3, 1962 contract was "void and unenforceable" by reason of Burke Homes' failure to have filed its 1962 annual report. Count II asserted that Burke Homes breached a provision in the July 3, 1962 contract which stated that, in the event the plaintiffs failed "to obtain financing or for any other reason" failed to fulfill the contract, $300 "shall be forfeited" to Burke Homes to cover certain described expenses and the balance of the $3,000 down payment refunded.

Although plaintiffs pleaded only the July 3, 1962 agreement, at trial all 3 agreements were received in evidence without objection. Both the July 9, 1962 and January 21, 1963 agreements contained a provision requiring completion of construction within 6 months after receipt of a mortgage commitment, and also provided: "If construction is not completed as herein set forth, purchaser has the option of declaring this agreement null and void, in which event, deposit monies will be refunded to purchasers."

## The Trial Judge's Findings

The trial judge ruled that the contract between the parties was not void, "at most, it is voidable," and the plaintiffs could not on that account recover the deposit money. He found that plaintiffs failed to sustain their burden of proof, that they entered into a substitute arrangement with others after becoming "disgusted" with Burke Homes, that they had not made necessary demands on Burke Homes and that they had not proven any actual damage due to any proven breach.

## The Statute of Limitations Defense

This action was filed January 13, 1965. The special 2-year statute of limitations applicable to actions against corporate officers for debts contracted during the period of default in filing annual reports and payment of fees[2] was not pleaded by the defendants nor was any effort made to inject that issue until the defendants' closing argument. The trial judge did not rule on whether he would allow the defense to be raised at that time. We decline to rule as a matter of law that the defendants should have been allowed to raise that defense so late in the trial of this case.[3]

## II.

Since none of the individual defendants would have any liability to the plaintiffs if the corporate defendant was not indebted to them, it is necessary

---

[2] CL 1948, § 450.90 (Stat Ann 1963 Rev § 21.90). See *Eberts Cadillac Co.* v. *Miller* (1963), 372 Mich 172.

[3] Section 4, rule 9 of the Rules of the Common Pleas Court of Detroit requires the facts constituting any affirmative defense, such as the statute of limitations, to be plainly set forth in the defendant's answer.

first to address ourselves to the question whether
Burke Homes had any liability to return any portion
of the $3,000 deposit money to the plaintiffs.

### Plaintiffs did not prove Burke Homes breached the contract

The trial judge did not err in finding that the
plaintiffs may not recover any portion of the $3,000
deposit under Count II for breach of contract.

Although it is apparent that Burke Homes' title
to the 3 lots for which it allegedly paid $2,700 was
tenuous—otherwise it is not likely that the plaintiffs
would have been able to acquire good title to these
very lots from the titleholder—and although the
plaintiffs had justification for concern as to Burke
Homes' ability to perform its obligations under the
contract—defendant Edward M. Burke, Jr. testified
that Burke Homes was in the process of winding up
its business and "financially it was in jeopardy"—
plaintiffs failed to prove a breach of contract by
Burke Homes.

Even if, as one witness testified, the 3 lots had not
been fully paid for and even though whatever inter-
est in the 3 lots Burke Homes acquired had, accord-
ing to Mr. Burke's testimony, been hypothecated
with Builders Finance Company (the company that
provided Burke Homes with interim construction
financing), there is nothing in the record which
negates the claim in behalf of Burke Homes that it
could have obtained good title to the lots when
needed had the plaintiffs been willing that Burke
Homes proceed with construction.

The trial judge did not decide which of the 3
written agreements embodied the governing con-
tractual provisions. Since there is nothing in the
record which would justify a construction that all
3 written agreements remained viable, it appears

sound to conclude that the governing contractual provisions are those set forth in the written agreement bearing the latest date, which superseded the earlier dated agreements.

Under the last dated agreement between the parties, Burke Homes was not obliged to commence construction until the plaintiffs had obtained a commitment for a permanent mortgage loan. Although there was testimony that the plaintiffs had been approved for a permanent mortgage, the record is silent as to when the commitment for the making of a permanent mortgage was obtained. There is nothing in the record which would support a finding that Burke Homes failed, after the receipt of such mortgage commitment, timely to proceed with the peformance of its obligations under the contract. For all that appears on this record Burke Homes was at no time delinquent in its contractual obligations to the plaintiffs. That may not be the actual fact, but the plaintiffs failed to support with evidence a contrary inference or finding.

### Plaintiffs did not prove anticipatory breach of contract

More than the possibility that Burke Homes might not have been able to acquire the 3 lots or to perform its contractual obligations had to be shown to support a finding that it was guilty of an anticipatory breach of contract. While Burke Homes had incurred substantial obligations to Builders Finance Company and one of its related companies, there is nothing in the record which refutes Mr. Burke's testimony that Burke Homes was then performing its construction obligations under other contracts and would have been able to perform this contract had the plaintiffs permitted it to do so.

It has been said that even "insolvency of a promisor is not an anticipatory breach."[4] In this connection it is to be noted that the precise financial condition of Burke Homes does not appear clearly on this record. In all events there is no need to lay down a hard and fast rule in order to decide this case. It is enough to say that there does not appear on this record such a clear, definite and unequivocal repudiation or inability to perform as would justify a finding of anticipatory breach.[5]

Since Burke Homes was not in default, the purchase by the plaintiffs of the 3 lots and their refusal to permit Burke Homes to proceed with construction so interfered with Burke Homes' ability to perform its obligations under the contract that it was relieved of the obligation it would otherwise have had under the January 21, 1963 agreement to return all the deposit money for failure to have completed construction within 6 months after receipt of a mortgage commitment.

"In any kind of contract, if the right of one party to compensation is conditional upon the rendition of some service or other performance by him or on his behalf, it is nearly always a breach of contract for the other party to act so as to prevent or to hinder and delay or to make more expensive the performance of the condition." 3 Corbin on Contracts, § 571, p 349.[6]

---

[4] Restatement, Contracts, § 324. *Cf.* 4 Corbin on Contracts, § 985, p 952: "Mere insolvency on the part of one who is under a contractual duty has never been held to be operative as a breach of the contract."

[5] See 4 Corbin, Contracts, § 973, p 905; § 984, pp 949-951; 17 Am Jur 2d, Contracts, § 448, pp 911, 912; § 453, pp 917, 918; Restatement, Contracts, § 318. *Cf. Sheahan* v. *Barry* (1873), 27 Mich 217, 223, and *Frohlich* v. *Independent Glass Co.* (1906), 144 Mich 278, 280.

[6] See, also, 5 Williston on Contracts (3d ed), § 677; 5 Williston on Contracts (Rev ed), § 1293A; Restatement, Contracts, §§ 295, 315.

*The Plaintiffs' agreement with Burke*
*Homes was voidable*

Under Count I, plaintiffs seek return of the $3,000 deposit on the theory that the contract was "void and unenforceable."

Section 87 of the general corporation act provides that the corporate powers of a corporation delinquent in filing its annual report are suspended during the period of delinquency. The 3 written agreements were entered into while Burke Homes' corporate powers were so suspended.

While it has been said that a contract entered into by a corporation while its powers are suspended is void (*Mishke v. Eddy Realty Co.* [1928], 241 Mich 501, 507), the trial judge was no doubt correct in saying that such a contract is not void, but rather only voidable (*Krenkel v. Thomasma* [1931], 255 Mich 283, 287). The contract is entirely enforceable against the offending corporation by the other party to the contract both as a matter of express statutory provision (CL 1948, § 450.87 [Stat Ann 1963 Rev § 21.87]) and judicial construction before the statute so expressly provided (*Krenkel v. Thomasma, supra*).

The law in Michigan is that a contract entered into by a corporation during a period in which it is delinquent in filing annual reports is so far invalid that the provisions of the contract may not affirmatively be relied upon by the delinquent corporation. *Detroit United Fruit Auction Co. v. Kroger Grocery & Baking Company* (1924), 227 Mich 412, 414, 415; *Dawn Construction Company v. Paris Home Builders, Inc.* (1960), 360 Mich 281, 285.

Even if the delinquent corporation has cured the delinquency and may therefore again have access to the courts, the other contracting party may defend against an action brought by the delinquent corpora-

tion on the ground that the contract sued upon is invalid because entered into during the period of delinquency (*Irvine & Meier* v. *Wienner* [1920], 212 Mich 199, 202). And, as in our case, where the other contracting party sues the delinquent corporation claiming that the contract was invalid, the delinquent corporation may not rely on the contract (*Mishke* v. *Eddy, supra*).

Only where the other contracting party does not assert such invalidity and is apparently content to have the matter decided based on the rights and obligations of the parties according to the contract may the delinquent corporation be heard to rely on the provisions of such a contract.

### *Plaintiffs may avail themselves of the remedy of rescission*

Under Count I plaintiffs seek what amounts to a rescission, not enforcement of the contract. We have concluded that the provision in section 87 stating that "nothing herein contained shall prevent" enforcement of a contract by the party contracting with the delinquent corporation should not be read as limiting the nondelinquent party's remedy to enforcement of the contract.

In *Mishke* v. *Eddy, supra,* the optionor rescinded an option agreement with a delinquent corporation, tendered back the money he had received for the option agreement and was successful in maintaining an action for cancellation of the option agreement and for a quieting of his title to the real estate which had been subjected to the option.

By the provisions suspending the delinquent corporation's powers and imposing personal liability on officers, the legislature hoped to compel greater compliance with the annual report filing requirements than it had thus far been able to obtain.

"A glance at the former legislation on the subject discloses that the legislation has been steadily, for several years, growing more drastic. The obvious reason for this was to compel prompt filing of annual reports." *Irvine & Meier* v. *Wienner, supra,* p 202. Similarly, see *Reuter Hub & Spoke Co.* v. *Hicks* (1914), 181 Mich 250, 253; *Breitung* v. *Lindauer* (1877), 37 Mich 217, 230.

The legislature's choice of remedy has been criticized as harsh (see 7 Wayne L Rev, 128, 134 [1960]), but the legislature has not yet chosen to ameliorate the section 87 penalties. We are obliged to interpret these provisions with a view to achieving the legis· lative objective of compelling obedience to the report filing requirement.

With that objective in mind, there is no reason to believe that the legislature intended to leave the unoffending contracting party and the offending corporation where they were, to deprive the unoffending contracting party of the right to rescind on the basis of the contract's invalidity, leaving him only the remedy of affirmance of the contract. A rule of law which would allow an unoffending contracting party who has made a deposit only the remedy of affirming the contract and seeking either specific performance or damages for its breach would be a rule which would indirectly enforce the voidable contract. See *Day* v. *The Spiral Springs Buggy Co.* (1885), 57 Mich 146, 151.

In Michigan it was early held that one who enters into a contract to purchase land which is void under the statute of frauds can recover back any money he paid prior to performance by the seller even though the seller is willing and offers to convey. *Scott* v. *Bush* (1873), 26 Mich 418.[7]

---

[7] Similarly, see *Colgrove* v. *Solomon* (1876), 34 Mich 494, 499; *Kelsey* ·v. *McDonald* (1889), 76 Mich 188, 194; *De Croupet* v. *Frank* (1920), 212 Mich 465, 467.

Part performance by a delinquent corporation cannot perfect its voidable contract. The policy declaring the contract voidable is more pervasive than that. "A rule of law established for the public good cannot be thus defeated." *Day* v. *The Spiral Springs Buggy Co., supra; cf. Irvine & Meier* v. *Wienner, supra,* p 202. No matter how far the delinquent corporation may have gone in the performance of the contract, it remains voidable and, absent full performance or special circumstances not shown here to be present (*cf. Day* v. *The Spiral Springs Buggy Co., supra*), the nondelinquent party, on the principle expressed in *Scott* v. *Bush, supra,* should be able to rescind and seek recovery of his deposit.

*The contract is subject to rescission because Burke Homes' corporate powers were suspended at the time of contracting, not because of any impediment upon maintenance of an action on the contract*

My colleagues write:

"The contract was unenforceable by the corporation so long as it was in default. *Industrial Coordinators, Inc.* v. *Artco, Inc.* (1962), 366 Mich 313. The corporate defendant is still in default and plaintiffs do not seek to enforce the contract, but by this action they rescinded."

I cannot agree that the plaintiffs may rescind because at the time this action was commenced Burke

---

The recovery of purchase money paid under a contract declared invalid by or under a statute has been allowed in a variety of situations even though the statute making the contract invalid did not expressly provide such a remedy. See, *e.g., California Delta Farms, Inc.* v. *Chinese American Farms, Inc.* (1928) 204 Cal 524 (268 P 1050, 1054) (contract void under alien land act); *Krause* v. *Marine Trust & Savings Bank* (1928), 93 Cal App 681 (270 P 246, 247) (land contract void under plat act); *Causeway Inv. Co.* v. *Nass* (Tex Civ App 1935), 84 SW2d 571, 574, rev'd on other grounds, 111 SW2d 703 (contract *ultra vires* as to defendant).

Homes was in default in filing annual reports and, thus, could not enforce the contract. A default in filing annual reports occurring after a contract has been entered into neither affects the validity of the contract nor furnishes a basis upon which the corporation's officers might be made personally liable thereon. As appears below (part III) such personal liability attaches only for debts of the delinquent corporation contracted during the period of noncompliance.

Had Burke Homes' corporate powers not been suspended at the time of contracting with the plaintiffs, the validity of the contract between the plaintiffs and Burke Homes could not now be questioned by the plaintiffs even though at the time the plaintiffs instituted this action Burke Homes was in default and, thus, could not itself maintain an action to enforce the contract.

The plaintiffs may avoid the contract with Burke Homes because at the time of contracting Burke Homes was in default, not because at the time they commenced this action Burke Homes was unable to enforce the contract.

### Plaintiffs' obligation to restore status quo

One who desires to rescind is required to put the other party *in statu quo.*

"Rescission, whether legal or equitable, is governed by equitable principles, one of which is that an essential prerequisite to the receipt of such relief is the return of what has been received, or its equivalent, by him who seeks the remedy." *Kundel* v. *Portz* (1942), 301 Mich 195, 210.

If Burke Homes had not done any work it would be entirely equitable to require it to pay back all

the deposit money it received from the plaintiffs just as in *Scott* v. *Bush, supra.* However, if some performance was undertaken, as Mr. Burke testified, it might be inequitable to require full payment. The trial judge made no finding as to whether the $2,700 allegedly paid for "deeds to lots" was in fact paid by Burke Homes. Even if the $2,700 was in fact paid, if Burke Homes obtained credit therefor on some other indebtedness which it owed Builders Finance Company then Burke Homes would have obtained the use of that $2,700, although perhaps in a way which was less desirable from the point-of-view of Burke Homes' then current needs.

The amount of the deposit Burke Homes ought to be permitted to retain should be measured by its expenditures which were of no further value to it, without regard to whether such expenditures were of lasting benefit to the plaintiffs. It is not necessary to make the plaintiffs whole to accomplish nonenforcement of the contract. Nonenforcement, the denial of all advantages under the contract to Burke Homes, will be fully accomplished if Burke Homes returns to the plaintiffs the deposit money received from them less the amount of its expenditures preparatory to performance of the contract which by reason of plaintiffs' refusal to allow further performance were without value to Burke Homes and, thus, represented a loss to Burke Homes.

The plaintiffs are not aggrieved parties. They have recovered nothing under their count for alleged breach of contract. Contracts entered into during the period of delinquency in filing annual reports are not denied enforcement to benefit those who during such period contract with the delinquent corporation (*Breitung* v. *Lindauer, supra*) but, rather, for the larger public good which will result if annual reports and fees are filed on time.

### *Tender in advance of bringing action was not required*

There was no need in this case for the plaintiffs to have tendered anything to Burke Homes or to have offered to restore anything to Burke Homes before commencing this litigation. There was nothing to tender. The plaintiffs had not obtained any conveyance; they had nothing in their possession that following the completion of rescission would have belonged to Burke Homes. Any offsets against the $3,000 deposit which Burke Homes is entitled to retain can only be determined by the court and will be declared in its final judgment.

"The general rule requiring the surrender, or offer to surrender, what has been received, upon the rescission of a contract voidable for fraud, is not one of universal application, and has many exceptions. It does not require unreasonable or impossible things to be done." *Munzer* v. *Stern* (1895), 105 Mich 523, 527.

In *Wright* v. *Dickinson* (1887), 67 Mich 580, the rescinding plaintiff had taken possession of the lands there in question and had cut substantial quantities of timber. The Court ruled (pp 588, 589):

"Purchase money paid for the purchase price of land can be recovered in an action for money had and received, whether the consideration fails for want of title or for want of a valid contract to convey.

"In either case the purchaser must place the other party *in statu quo,* so far as is practicable for him to do so; and in either case the equities, so far as they can be measured by a pecuniary standard, can all be settled and adjusted in the suit.

"In this case there is no occasion to call for the interposition of a court of equity. There are no

deeds to be surrendered up and cancelled, nothing which is required to be perpetuated by a decree. All there is to be ascertained can be ascertained by a jury; and that is, how much in equity and good conscience ought the defendants to repay of the purchase money they have received."[8]

## III.

### *The personal liability of the individual defendants for failure to file the annual report*

Section 87 of the general corporation act provides that any officer of a corporation in default in filing its annual report "who has neglected or refused to join in making of such report and/or pay such fee shall be liable for all debts of such corporation contracted during the period of such neglect or refusal."

The plaintiffs showed that the annual report for 1962 was not timely filed, and that the defendant Edward Burke, president of Burke Homes, had no recollection whether any effort had been made to see to its filing. This evidence was sufficient to permit the trier of fact to find that the failure to file the report was due to the neglect or refusal of the individual defendants who were officers of the corporation at the time. *Deloria* v. *Van Winkle* (1910), 162 Mich 660, 662.[9]

---

[8] Similarly, see *Barke* v. *Grand Mobile Home Sales* (1967), 6 Mich App 386, 393, *Zadel* v. *Simon* (1922), 221 Mich 180, 184, and *Holmes* v. *Borowski* (1925), 233 Mich 407, 413. See, also, *Szarkowski* v. *Pfister* (1933), 262 Mich 226, 230, and *Sutton* v. *Meyering Land Co.* (1929), 248 Mich 601, 605.

[9] In a number of cases it has been held that the failure to file the report raises a presumption that the same was due to the neglect or refusal of those who by statute are made responsible for its filing, which presumption they may refute by coming forward with evidence showing that they were not responsible for the failure of the report to have been timely filed. See *Wallace* v. *Pere Marquette Fiber Glass Company, Inc.* (1966), 2 Mich App 605, 611; *MacBeth-Evans* v. *Gumbinsky* (1918), 201 Mich 18, 25; *Gennert* v. *Ives* (1894), 102 Mich 547, 550, 551.

*Cf. R. C. Mahon Co.* v. *Molin* (1930), 252 Mich 606, 613; *L. J. Barry Coal Co.* v. *Houghten* (1937), 282 Mich 547, 551, and *South-*

"If the plaintiff should be required in the first instance to prove by direct evidence the actual intent of the minds of the delinquent directors, and should be precluded from making proof by inference from the fact of omission to perform the act required by the statute, the object of the law would be seriously obstructed, if not in many cases altogether defeated." *Van Etten* v. *Eaton* (1869), 19 Mich 186, 193.

### The liability of Burke Homes to the plaintiffs was a "debt"

In *Lockhart* v. *Van Alstyne* (1875), 31 Mich 75, 78, the Court declared the following definition of the word "debt" as used in a predecessor of the present statute, which predecessor statute made directors liable for "debts of such corporations contracted during the period of such neglect or refusal":

"Liabilities of a company which may give causes of action against it and result in judgments are not within the statute unless they constitute present debts. A debt is that which one person is bound to pay to another, either presently or at some future period; something which may be the subject of a suit *as a debt,* and not something to which the party may be entitled as damages in consequence of a failure to perform a duty or keep an engagement." (Emphasis supplied.)

For reasons already stated, Burke Homes' liability to return the deposit money to the plaintiffs because of the contract's invalidity was a liability

---

*field Company* v. *Christensen* (1943), 305 Mich 656, 659, stating that innocent mistakes in filing reports later corrected upon discovery may not be availed of to invalidate contracts entered into before the mistake has been corrected. See, also, *Radio Electronics Supply Company* v. *Smith* (1964), 372 Mich 393, 395, where the court found there was "substantial deliberate noncompliance" with the report filing requirement.

on which action was properly instituted by the plaintiffs against Burke Homes.

Was it a liability for which an action can be maintained "as a debt"? We think it is. Plaintiffs did not seek unliquidated damages for nonperformance of the contract. Rather, they sought the return of a fixed sum, namely $3,000. Their right to the return of that sum flows from the fact that they, as they had a right to do under § 87 of the general corporation act, chose to treat the contract with Burke Homes as invalid and the resulting failure of consideration. *Cf. Scott* v. *Bush, supra,* p 419; *Kuchenmeister* v. *Dusza* (1922), 218 Mich 497, 498; *De Moss* v. *Robinson* (1881), 46 Mich 62, 63. Burke Homes' liability was a debt both in common parlance and at common law.[10]

That Burke Homes may have the right to retain some portion of that sum to restore to it expenditures which it made preparatory to performance of the contract does not change the essential nature of its obligation to the plaintiffs, any more than a right of set-off or recoupment would change a suit for any other fixed sum into a suit for an unliquidated amount.

### *The debt was contracted during the period of delinquency*

Both Burke Homes' and the plaintiffs' rights in respect to the $1,000 paid before Burke Homes'

---

[10] See 1 Am Jur 2d, Actions, § 20.

"It is never forgotten that the action of debt is not necessarily based on contract—it serves for the recovery of statutory penalties, of forfeitures under bye-laws [sic], of amercements, and of monies adjudged by a court to be due." Maitland, The Forms of Action at Common Law, p 63.

In Michigan the common law action for debt was abolished in 1915. See ch 11, § 1. The Judicature Act of 1915, PA 1915, No 314, p 66; see, also, Committee Comment to GCR 1963, 110.3. However, as Maitland observed, "The forms of action we have buried, but they still rule us from their graves," Maitland, *supra,* p 2.

powers were suspended and in respect to the $2,000 balance of the $3,000 deposit paid after its powers were suspended are derived from the last dated governing agreement which was entered into after its powers were suspended, which contract superseded all prior oral and written understandings and agreements.

Since the rights and obligations of both parties in the $3,000 were settld in a contract entered into during the period of delinquency and consequent suspension of corporate powers, Burke Homes' liability to the plaintiffs was contracted during the period of delinquency and is a liability for which its responsible officers are personally liable to the plaintiffs.

The question whether Burke Homes' liability to the plaintiffs was contracted during the period of its delinquency is not affected by the remedy sought by the plaintiffs.

*The officers are personally liable even if the debt was contracted while the corporation was winding up its affairs*

Mr. Burke testified that Burke Homes was in the process of winding up its business. In *Division Avenue Realty Co.* v. *McGough* (1936), 274 Mich 163, the Michigan Supreme Court stated that "the penalty mentioned in Act No 327, Sec. 87 * * * applies only to going corporations." On analysis, however, it is clear that the Court was talking only about access to the courts when it made that observation, and that it did not mean thereby to declare valid contracts which were voidable when made or to affect the liability of officers for the payment of debts contracted during the period of delinquency.

In *Division Avenue Realty Co.* the contract sued upon had been entered into *before* the delinquency

in filing annual reports. The action was instituted after the corporation had failed to file reports for several years and after it had lost its principal asset through foreclosure. In holding that section 87 did not prevent the delinquent corporation from bringing action for unpaid amounts due the corporation, the Supreme Court relied on section 75 of the Michigan general corporation act (CL 1948, § 450.75 [Stat Ann 1963 Rev § 21.75]) which expressly authorizes maintenance of actions by corporations whose charters shall be annulled by forfeiture or in any other way or manner have become void, and expressed concern that a rule of law denying such a corporation access to the courts might work an injustice upon its creditors.[11]

The other penalties provided in section 87 (see *E & G Finance Co., Inc.* v. *Simms* [1961], 362 Mich 592) are applicable without regard to whether the delinquent corporation at the time of contracting or later has ceased to be a going concern. *Cf. Radio Electronics Co.* v. *Smith* (1964), 372 Mich 393, 394.

### *The defendant Griffin was not personally liable as an officer*

Mr. Griffin had tendered his resignation[12] as secretary of the corporation but not as a director before he departed in 1957 for a 5-year assignment in Africa. Thereafter he performed no further services for the corporation. Although he did not

---

[11] Similarly, see *John F. Gamalski Hardware, Inc.* v. *Wayne County Sheriff* (1941), 298 Mich 662 (136 ALR 1155), *Benton Harbor Federation of Women's Clubs* v. *Nelson* (1942), 301 Mich 465, *Women's Relief Corporation* v. *Library Board* (1945), 313 Mich 85, 92, and *In re Petitions of Auditor General* (1952), 333 Mich 700, 705, 706, where the Supreme Court allowed delinquent corporations to maintain actions to vindicate their asserted interest in property held or claimed by another. All these cases concerned access to the courts, none concerned the other penalties under section 87.

[12] See 2 Fletcher's Cyclopedia Corporations, § 349, p 144; 19 Am Jur 2d Corporations, § 1114, p 553.

purport to resign as director of the corporation, directors of a corporation as such no longer have any personal liability for a corporation's failure to have filed its annual report.[13] The trial judge correctly found that Griffin was not an officer personally responsible for debts contracted during the period of delinquency in filing annual reports.

I concur in the order remanding this case to the trial court for a determination of the amount the defendant Burke Homes should be required to repay to the plaintiffs and for a determination of the personal liability of the remaining individual defendants therefor.

---

[13] The statutes discussed in some of the early cases previously mentioned in this opinion imposed upon the directors liability for failure to file the required annual report; but then it was the directors, not the officers, whose signatures were needed on the annual report. See 2 Compiled Laws of Michigan 1915, § 9028, and earlier compilations.

In 1921 the law was amended to change the required signatures on the annual report from a majority of the directors to the president or vice president and secretary or assistant secretary of the corporation, but no change was made at that time in the statutory language with regard to the liability of directors of corporations that fail to file annual reports. PA 1921, No 84, part 5, ch 2, p 185. When the Michigan general corporation act was adopted in 1931, PA 1931, No 327, §§ 83 and 87, p 596, the provision making directors personally liable for a failure to file was changed to impose such personal liability on the officers who neglect or refuse to file.

. The 1931 legislation contained belated legislative recognition that directors should no longer be personally liable since they no longer had any responsibility for filing reports. Furthermore, since it was well established that the directors' liability was not absolute, but depended upon "neglect" or "failure" (see footnote 9, *supra*, and accompanying text), the only sensible reading of the words "officer" or "officers" is to read them as covering only those officers whose signatures may validly appear on the annual report. Hence, directors are no longer personally liable.